Kofi Modibo AJABU, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S00–9810–CR–546.

Supreme Court of Indiana.

Jan. 21, 2000.

Neil L. Weisman, South Bend, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Kofi Ajabu's role in a triple robbery-murder led to a sentence of life in prison without parole. When he appealed, we found certain defects in his sentencing and remanded to the trial judge, who imposed prison terms totaling 240 years. Ajabu claims this sentence is excessive. In light of the fact that the trial court could well have imposed life without parole a second time, we affirm.

### Facts and Procedural History

When this case was initially here on appeal, we described the crimes involved this way:

> On March 17, 1994, Nicholas Allemenos, Lisa Allemenos, and Christopher James were found dead in the home of Nicholas's and Lisa's father, George Allemenos in Carmel. The house had been ransacked and the three victims' throats had been cut.... Defendant Kofi Ajabu and two other men, James Walls and Raymond Adams, soon became suspects.

*Ajabu v. State*, 693 N.E.2d 921, 925–26 (Ind.1998). Ajabu was charged and convicted of three counts of murder, three counts of criminal confinement, three counts of robbery, and one count of burglary. *Id.* at 926–27. The trial court sentenced him to concurrent terms of life in prison without parole ("LWOP") for each murder conviction, and to a term of years for each of the other convictions, sixty years of which to be served after the concurrent life terms. *Id.* at 925. In so sentencing, the court found three statutory aggravating circumstances supporting life imprisonment without parole: intentional killing (Ind.Code § 35–50–2–9(b)(1)), commission of another murder (Ind.Code § 35–50–2–9(b)(8)), and killing persons who were confined (Ind.Code § 35–50–2–9(b)(13)(C)).[1]

On appeal, this Court affirmed Ajabu's convictions, but remanded for a new sentencing order. We observed that the trial court's findings on the (b)(1) aggravator seemed more pertinent to a "knowing" killing and asked the trial judge to be more particular about what facts he thought demonstrated that Ajabu killed "intentionally"—as required, when a court relies on

---

1. Formerly Ind.Code Ann. § 35–50–2–9(b)(12)(C) (West Supp.1993).

Ind.Code § 35–50–2–9(b)(1). *Ajabu*, 693 N.E.2d at 939. We noted that the other two aggravating circumstances the trial court found in imposing life without parole were unchallenged and observed: "The only open question is the quantum of aggravating evidence to be weighed against the mitigating factors." *Id.* at 940.[2]

On remand, the trial court determined that it could not find proof beyond a reasonable doubt that Ajabu killed intentionally. (R. at 95.) Rather than proceed to balance the two other LWOP aggravators as against the mitigators, the court resentenced Ajabu under the general felony sentencing statutes. It imposed 60 years for each murder count,[3] 20 years for each robbery count,[4] and 13 years for each confinement count.[5] The court then ordered that the sentences for confinement and robbery run concurrently, but ordered that those sentences run consecutively to the murder sentences.[6] (R. at 109–110.) This resulted in three 80–year sentences running consecutively for a total of 240 years.

### Discussion and Decision

The central thesis of Ajabu's appeal is that the trial court, having declared that it could not make the findings necessary for the (b)(1) aggravator, set out to "circumvent the specific requirements needed for a life without parole sentence" by imposing 240 years, an effective life sentence. (Appellant's Br. at 10.)

■ As we have indicated above, the sentencing court need not have abandoned the life without parole sentence on remand. Our previous opinion said that the court "must make the findings required to establish the (b)(1) aggravating circumstance beyond a reasonable doubt" if it used the (b)(1) aggravator to support imposition of life without parole. *Ajabu*, 693 N.E.2d at 940. If, as it turned out, the sentencing court could not make the findings necessary to support this aggravator, then it could have relied on the (b)(8) and (b)(13) aggravating circumstances to impose life without parole.

■ Thus, we approach Ajabu's contention that his sentence is manifestly unreasonable[7] in light of the fact that the trial court could well have re-imposed LWOP using the other two statutory aggravators.

■ *A. Aggravating Factors – Sentence Enhancement.* In sentencing Ajabu

---

2. We also asked the trial court to: 1) clarify the aggravating circumstance findings under Ind.Code § 35–50–2–9(b)(8); 2) determine whether the mitigating circumstances are outweighed by the aggravating circumstances for each murder conviction; and 3) set forth the court's "personal conclusion that the sentence is appropriate punishment for this offender and this crime." *Ajabu*, 693 N.E.2d at 940.

3. Pursuant to the statute under which Ajabu was sentenced for murder, the presumptive term was 40 years, with not more than 20 years added for aggravating circumstances. Ind.Code Ann. § 35–50–2–3 (West Supp. 1993).

4. Pursuant to the statute under which Ajabu was sentenced for robbery, the presumptive term was 10 years, with not more than 10 years added for aggravating circumstances. Ind.Code Ann. § 35–50–2–5 (West Supp. 1993).

5. On remand the sentencing court applied Ind.Code § 35–50–1–2(c), "except for crimes of violence, the total of the consecutive terms of imprisonment, ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." Criminal confinement is not defined as a crime of violence; therefore, the court enhanced the confinement sentence only 3 years, for a total of 13 years, so that the total consecutive sentence would not exceed 40 years. (R. at 107.)

6. The court also sentenced Ajabu to 20 years for burglary, to run concurrently to the other sentences. (R. at 109.)

7. The Indiana Constitution, Article VII, Section 4, grants this Court authority to review and revise sentences. We exercise restraint in this review, however, and revise only those sentences that are "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B).

on remand, the trial court first considered the aggravating and mitigating factors. Indiana Code § 35–38–1–7.1 governs the use of aggravating and mitigating factors and lists specific factors that a court may consider while sentencing. In enhancing a sentence, the court should "1) identify the significant aggravators and mitigators, 2) relate the specific facts and reasons which lead the court to find those aggravators and mitigators, and 3) demonstrate it has balanced the aggravators against the mitigators in reaching its sentence." *Gregory v. State,* 644 N.E.2d 543, 545 (Ind.1994).

Here, the court found two statutory aggravating factors: 1) that the imposition of a reduced sentence or probation would depreciate the seriousness of the crime, and 2) that Ajabu is in need of correctional or rehabilitative treatment that can best be provided in a penal facility. (R. at 98–99.)

With respect to the first aggravator, the court reasoned that imposing any sentence *less* than the enhanced sentence would depreciate the seriousness of the crime. In so deciding, the court relied on Ajabu's actions of "[b]ringing a weapon to the Allemenos home, disguising himself, standing watch over Nicholas Allemenos, [taping] Nicholas Allemenos and dragging Lisa Allemenos by her feet." (R. at 99.)

■ Courts speak about the "depreciating the seriousness of a crime" aggravator in two different ways. Indiana Code § 35–38–1–7.1 says it is an aggravating circumstance that the "[i]mposition of a *reduced sentence* ... would depreciate the seriousness of the crime" (emphasis added). In this instance, the aggravator cannot be used to justify an enhanced sentence, but may only be used when the judge considers imposing a sentence shorter than the presumptive one. *Ector v. State,* 639 N.E.2d 1014, 1016 (Ind.1994). An alternate form of this factor focuses on the imposition of an enhanced sentence. "This Court has ... upheld sentence enhancement based upon a finding that a sentence less than an *enhanced* term

sought by the prosecution would depreciate the seriousness of the crime." *Id.*

■ Here, the trial court acknowledged the differing uses of this aggravator and specifically articulated that use of the aggravator in the instant case fell under the "alternate" version. The court reasoned that, in light of the facts and circumstances of the case, and since the prosecution had requested an enhanced sentence, (R. at 181), the imposition of any sentence less than an enhanced sentence would depreciate the seriousness of the crime, (R. at 99). This was an appropriate finding in light of the particular facts the court identified in support of it.

■ With respect to the second aggravating circumstance, Ajabu's need for correctional or rehabilitative treatment, the court stated:

> The most obvious facts supporting this aggravator are the crimes themselves: the brutal method of killing and the number and ages of the victims. A person capable of committing the atrocities for which Kofi Ajabu was convicted is in dire need of correctional treatment. This court knows nothing that exists outside the correctional system that can accomplish the correctional and rehabilitative treatment necessary to deal with the heinous conduct and reckless disregard for human life engaged [in] by Kofi Ajabu.

(R. at 98–99.)

■ In using this aggravator to support an enhanced sentence, it is not enough that the sentencing court simply recite the statutory language. Many times, as was the case here, there is no question that the defendant will be incarcerated in a penal facility. Thus, for this aggravator to support an enhanced sentence, the court must give a specific and individualized reason why the defendant is in need of correctional treatment that can best be provided by a period of incarceration *in excess* of the presumptive sentence. *See Berry v. State,* 703 N.E.2d 154, 158 (Ind.1998). The trial

court did so here, and this aggravator was appropriately given weight in imposing an enhanced sentence.

■ The trial court properly considered two statutory aggravators, in addition to several other aggravators not listed in the statute.[8] These factors were 1) the nature and circumstances of the crime, specifically that the victims had been tortured and were in extreme pain during their confinement and that Ajabu exercised control over their situation; 2) Ajabu's role in the planning and execution of the events; and 3) the psychological and emotional effects on the victims' families. (R. at 100–01.)

■ Determining that the aggravating factors outweighed the mitigating factors, the court enhanced the sentences for murder and robbery, and ordered that the sentences for robbery and confinement run concurrently to the murder sentences.

■ *B. Aggravating Factors – Consecutive Sentencing.* The imposition of consecutive sentences is a separate and discrete decision from sentence enhancement, although both may be dependent upon the same statutory aggravating circumstances. Ind.Code Ann. § 35–38–1–7.1(b) (West Supp.1993); *Lindsey v. State,* 485 N.E.2d 102, 108 (Ind.1985). As with sentence enhancement, even a single aggravating circumstance may support the imposition of consecutive sentences. *Stewart v. State,* 531 N.E.2d 1146, 1150 (Ind. 1988).

■ Here, the sentencing court on remand identified the aggravating factors previously discussed, gave specific facts and reasons supporting each aggravator, and weighed these aggravators against the mitigating circumstances. *See Fry v. State,* 521 N.E.2d 1302, 1306 (Ind.1988); (R. at 92–107.) The court also said: "The evidence presented during Kofi Ajabu's trial detailed the extreme viciousness of the murders and the brutality leading up to the murders. This along with the aggravating circumstances set out herein make it clear that the court can impose consecutive sentences...." (R. at 106.) Having previously determined that the aggravating factors were properly found, we conclude that the court did not err in using these factors to support consecutive sentencing.

*C. Failure to Consider Mitigating Factors.* Finally, Ajabu contends that the trial court erred in failing to consider several mitigating circumstances. Ajabu presented the following mitigators for the court's consideration: 1) that Ajabu demonstrated remorse, (R. at 190), 2) that he did not intend to kill the victims when the crimes were originally planned or when they were executed, (R. at 193), 3) that he had no history of delinquency or criminal activity, (R. at 196), 4) that he would respond affirmatively to probation or short-term imprisonment, (R. at 197), and 5) that he is unlikely to commit another crime, (R. at 198).

"The finding of mitigating factors is not mandatory and rests within the discretion of the trial court." *Hurt v. State,* 657 N.E.2d 112, 115 (Ind.1995). "Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was improperly overlooked." *Legue v. State,* 688 N.E.2d 408, 411 (Ind.1997).

■ The mitigators which Ajabu claimed the sentencing court overlooked are not clearly supported by the record. Ajabu first argues that the sentencing court failed to consider the mitigating factor "that he did not intentionally kill anyone." (Appellant's Br. at 10.) To be sure, the court said it could not "find proof beyond a reasonable doubt that Mr. Ajabu committed murders by intentionally killing his victims while attempting to commit burglary or robbery." (R. at 95.) When a

---

8. The criteria listed in Ind.Code § 35–38–1–7.1(b) do not limit the matters that a court may consider in determining a sentence. Ind.Code Ann. § 35–38–1–7.1(d) (West Supp. 1993).

court finds the evidence inadequate to prove an intentional killing, it does not necessarily follow that the killing was unintentional or unknowing or accidental. On the available evidence, the court was not required to find lack of intent as a mitigator.

 Ajabu also asserts that the trial court should have found that he did not contemplate that his crime would cause serious harm to persons or property. Ind. Code Ann. § 35–38–1–7.1(c)(1) (West Supp.1993). The sentencing judge was entitled to be skeptical about this proposition in light of the fact that Ajabu arrived at the Allemenos home armed with weapons and duct tape. (R. at 95.) There is no significant evidence in the record to the contrary. Likewise, the record does not support Ajabu's contention that he is likely to respond affirmatively to probation or short-term imprisonment or that he is unlikely to commit another crime.

The sentencing court did find two significant mitigating factors: 1) that Ajabu had no history of delinquency or criminal activity and 2) that he demonstrated remorse. (R. at 104.)[9] It then found that the aggravating factors in each count outweighed the mitigating factors. (R. at 108.)

### Conclusion

The essence of Ajabu's claim is that the sentencing judge circumvented our previous ruling and "virtually imposed life without parole anyway." (Appellant's Br. at 13.) Our previous opinion, however, did not preclude the court from imposing a life sentence without parole. The (b)(1) aggravator used in imposing life without parole was only one of several possible aggravators. Therefore, Ajabu's argument that his sentence is manifestly unreasonable because it is a "virtual life sentence" is unavailing.

9. The sentencing court was hard-pressed to give this finding much weight. At the sentencing hearing, the court stated: "The lack of remorse is something that I dealt quite a bit with, because I found remorse as a miti-

The sentencing court properly considered the aggravating and mitigating factors in imposing enhanced and consecutive sentences. The sentence imposed represents a valid exercise of trial court discretion.

Accordingly, we affirm.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

gator in the initial sentencing stage.... That remorse, however, was a very cursory 'I'm sorry,' in this very courtroom at the very moment that he was to be sentenced." (R. at 184.)