Adam BORTON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0102–CR–69.

Court of Appeals of Indiana.

Nov. 30, 2001.

David Becsey, Zeigler Cohen & Koch, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Adam Borton ("Borton") appeals his convictions of Conspiracy to Commit Robbery,[1] and Attempted Robbery,[2] both Class A felonies. We affirm the conviction for Conspiracy to Commit Robbery and vacate the conviction for Attempted Robbery. We revise Borton's sentence to the presumptive sentence to be imposed upon a Class A felony conviction.

### Issues

Borton presents three issues for review:

I.   Whether the trial court erred in refusing to suppress Borton's statements to police;

II.  Whether Borton was improperly convicted of both Conspiracy to Commit Robbery and Attempted Robbery;

III. Whether the sentence imposed is manifestly unreasonable.

### Facts and Procedural History

On February 18, 1999, Michael Straight ("Straight") arrived in Indianapolis to visit his long-time friend, Springe Stubbs, who was also Borton's girlfriend. Borton's friend Darrell Robinson ("Robinson") began to taunt Borton about allowing someone to visit his girlfriend. Initially, the pair discussed "beating up" Straight, but their focus turned to robbery after Straight revealed that he had a large amount of cash with him.

Borton, Robinson and Jonathan Lander ("Lander") engaged in telephone conversations to plan the robbery. Borton was to bring Straight to a bridge at the Westbury Court Apartments in Indianapolis, where Robinson and Lander would be waiting. Lander was to bring a gun.

During the evening, Borton requested that Straight take him to a friend's house to return some CDs. When Straight and Borton arrived at the Westbury Court Apartments, Robinson, Lander and James Walker ("Walker") were waiting. Lander forced Straight out of his car at gunpoint. Straight opened his trunk for Lander's inspection. Taking nothing, Lander pushed Straight back into the car. Lander reached into the passenger side and fired multiple shots, fatally wounding Straight. Lander, Walker and Robinson fled.

Borton stayed with Straight until the police arrived. Borton told the officers that his friend had been the victim of an attempted robbery and a shooting. An

---

**1.** Ind.Code §§ 35–41–5–2 and 35–42–5–1.

**2.** Ind.Code §§ 35–41–5–1 and 35–42–5–1.

officer asked Borton to wait in the front seat of a police car. At 1:35 a.m., Borton gave a statement to Detective Michael Turner ("Detective Turner"). Borton implicated Robinson, Lander and Walker and showed the police where Robinson and Lander lived. Borton then went home with his parents.

During the investigation, some of the participants implicated Borton. Detective Turner called Borton's home and spoke with Borton's mother, stating that he would like to talk with Borton again. Borton's stepfather Timothy Ross ("Ross") brought Borton to the police station on the morning of February 19, 1999, where Borton made another statement. During this taped statement, Borton made self-incriminating comments.

Borton was charged with murder, felony murder, attempted robbery and conspiracy to commit robbery. Prior to trial, and again at trial, Borton moved to suppress his police statements; the motions were denied. At the conclusion of Borton's bench trial, he was acquitted of murder and felony murder but convicted of attempted robbery and conspiracy to commit robbery. The trial court imposed upon Borton concurrent fifty-year sentences. Borton now appeals.

### Discussion and Decision

#### I. Motion to Suppress Police Statements

Borton was seventeen at the time he gave his confession. He now claims that his initial statement to police should have been suppressed because it was given without a *Miranda* warning, and that his subsequent confession should have been suppressed because he and Ross were not given the opportunity for meaningful consultation on a timely basis.

Indiana Code section 31–32–5–1 provides in pertinent part:

Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:

(1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;

(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

  (A) that person knowingly and voluntarily waives the right;

  (B) that person has no interest adverse to the child;

  (C) meaningful consultation has occurred between that person and the child; and

  (D) the child knowingly and voluntarily joins with the waiver[.]

The State bears the burden of showing that a juvenile defendant received all of the protections of the foregoing statute. *Brown v. State,* 751 N.E.2d 664, 670 (Ind. 2001). However, as with any review of the admissibility of a confession, we review the evidence in the light most favorable to the trial court's decision. *Id.* We review a trial court's ruling as to the voluntariness of a waiver by looking to the totality of the circumstances. *Cherrone v. State,* 726 N.E.2d 251, 253 (Ind.2000). Pursuant to Indiana Code section 31–32–5–4, a review of the totality of the circumstances in a juvenile case includes consideration of the child's physical, mental and emotional maturity; whether the child or parent understood the consequences of the child's statements; whether the child and parent had been informed of the delinquent act; the length of time the child was held in custody before consulting with his parent; whether there was any coercion, force, or inducement; and whether the child and parent were advised of the child's right to

remain silent and to the appointment of counsel. *Id.* at 253–54.

### A. Initial Statement

Concerning Borton's initial statement, the threshold question is whether he was subject to custodial interrogation. As a general rule, when a juvenile who is not in custody gives a statement to police, neither the safeguards of *Miranda* warnings nor the juvenile waiver statute is implicated. *A.A. v. State,* 706 N.E.2d 259, 261 (Ind.Ct.App.1999). A custodial interrogation need not be preceded by an arrest, but must commence after the person's freedom of action has been deprived in a significant way. *Id.*

Evidence adduced by the State discloses that Borton volunteered information to police officers arriving to assist Straight to the effect that he and Straight had been victimized. Borton also proffered information regarding the perpetrators. He was asked to wait in a police car, without handcuffs or physical restraint on his freedom. When Borton's mother arrived, she was allowed to speak with him. After Borton gave a statement and showed officers where two of the suspects lived, he was allowed to go home with his parents. By all indications at this point, Borton appeared to be a victim/eyewitness willing to help apprehend the perpetrators. Considering the evidence in a light most favorable to the trial court's determination, we conclude that Borton was not subject to custodial interrogation when he gave his initial statement, nor was the statement the product of coercive police activity. The motion to suppress Borton's initial statement was properly denied.

### B. Subsequent Statement at the Police Station

The State presented evidence that Borton was afforded ten to fifteen minutes to consult with Ross privately at the police station. Borton concedes that he was afforded the opportunity to consult with Ross, but claims that he signed the waiver form before the consultation took place. Second, he claims that the consultation was not meaningful because Ross did not know that Borton was considered a suspect in the crimes against Straight.

The meaningful consultation requirement will be met when the State demonstrates "actual consultation of a meaningful nature or the express opportunity for such consultation, which is then forsaken in the presence of the proper authority by the juvenile, so long as the juvenile knowingly and voluntarily waives his constitutional rights." *Brown,* 751 N.E.2d at 670 (quoting *Williams v. State,* 433 N.E.2d 769, 772 (Ind.1982)). The preferred practice is to provide consultation after advising the juvenile and his or her parents of the rights to be waived. *Cherrone,* 726 N.E.2d at 257 n. 1.

Detective Turner testified that he met with Borton and Ross, reviewed the juvenile rights form with them, left them alone to talk for ten to fifteen minutes, and then returned. Sheriff's Deputy Michael Hornbrook testified that "*after* Borton, his father, Deputy Hornbrook and Detective Turner signed the waiver of rights, Borton was asked to make a statement in writing." (R. 165.) Therefore, contrary to Borton's assertion, the evidence most favorable to the trial court's decision indicates that the proper sequence of advice, consultation, waiver and statement was observed.

Moreover, the absence of specific advice to Ross that Borton was a suspect in the crimes against Straight does not render the consultation meaningless or the waiver involuntary. A waiver can be made knowingly even where the parent is not specifically apprised of the charges against

the child or the act of which the child is suspected. *Trowbridge v. State*, 717 N.E.2d 138, 146 (Ind.1999), *reh'g denied*. Here, Ross was aware that Straight had been murdered, that his son was present at the time of the murder, and that he knew people who had allegedly committed the murder. Moreover, Borton was personally acquainted with Straight, a potential rival for the affections of Borton's girlfriend. In light of these facts, Ross should have appreciated that Borton was potentially a suspect in the crimes against Straight.[3]

### C. Totality of the Circumstances

Borton was seventeen years and eleven months of age when he made his statements. As he waited to make the first statement, Borton was allowed to see his mother as soon as she arrived at the scene. On the occasion of the second statement, Ross voluntarily brought Borton to the police station and remained with him throughout the interview. Borton and Ross were informed of Borton's rights, and afforded the opportunity for consultation in private. They each executed a waiver form. The record is devoid of any evidence of police force, coercion or improper inducement to secure either statement. Under the totality of the circumstances, Borton's statements were voluntary. They were properly admitted into evidence.

### II. Dual Convictions of Attempt and Conspiracy

Indiana Code section 35–41–5–3(a) provides:

A person may not be convicted of both a conspiracy and an attempt with respect to the same underlying crime.

Borton was convicted of both attempted robbery and conspiracy to commit robbery with respect to the same underlying crime against Straight, in contravention of the foregoing statute. Thus, we reverse his conviction for attempted robbery.

### III. Manifestly Unreasonable Sentence

█ Finally, Borton argues that the imposition of the maximum sentence upon conviction of a Class A felony is manifestly unreasonable in his case.[4] He claims that, in light of his youth and the nature of his prior juvenile adjudications, the primary focus of the sentencing court should have been rehabilitation rather than retribution.

█ This Court has the constitutional authority to review and revise sentences. Ind. Const. Art. VII, Sec. 6. However, we will not do so unless the sentence imposed is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The standard is "not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly and obviously so." *Noojin v. State*, 730 N.E.2d 672, 679 (Ind.2000).

█ Where the sentencing court imposes an aggravated sentence, it must make valid findings to support an aggravator. *Ajabu v. State*, 722 N.E.2d 339, 342 (Ind.2000), *reh'g denied*. The court should identify the significant aggravators and mitigators and demonstrate that it has balanced the aggravators against the miti-

---

3. A portion of Ross's trial testimony also indicates that he knew his son was in legal trouble. Ross testified: "And Adam looked at me crying, he was shaking. He said, 'Dad, help me.' And I told him that he wasn't giving them enough for them to help you. That they needed more for them to help you." (R. 280.)

4. Indiana Code section 35–50–2–4 provides that a person who commits a Class A felony shall be imprisoned for a fixed term of thirty years, with not more than twenty years added for aggravating circumstances.

gators in reaching its sentence. *Id.* at 343. The requirement of a specific sentencing statement guards against arbitrary sentences and provides an adequate basis for appellate review. *Bacher v. State,* 722 N.E.2d 799, 801 (Ind.2000).

■ In support of the enhanced sentence imposed upon Borton, the trial court identified as aggravating circumstances the following: Borton's plan to rob someone who trusted him, his previous record of juvenile adjudications, his violation of probation, his unsatisfactory conduct during the instant incarceration period, and the failure of prior attempts at rehabilitation. The court recognized as mitigating factors Borton's youth, his attainment of a GED, his assistance to police, and hardship to his family upon his incarceration.

■ To the extent that the trial court's statement "You did plan to commit this robbery of someone you knew, someone who trusted you," (R. 372.), may be construed as finding the formulation of a plan to be an aggravating circumstance, reliance upon this aggravator was improper. A fact that comprises a material element of a crime may not also constitute an aggravating circumstance to support an enhanced sentence (although a court may properly consider the particularized circumstances of the factual elements as aggravating circumstances). *Stewart v. State,* 531 N.E.2d 1146, 1150 (Ind.1988). Nevertheless, a single valid aggravating circumstance is adequate to support the enhancement of a sentence. *Love v. State,* 741 N.E.2d 789, 793 (Ind.Ct.App.2001).

■ However, in addition to reviewing the traditional balancing of aggravating and mitigating circumstances, we review the sentence to assure that it is constitutionally proportionate to the nature of the offense and the character of the offender. The maximum enhancement permitted by law should be reserved for the very worst offenses and offenders. *Bacher v. State,* 686 N.E.2d 791, 802 (Ind.1997). Here, the trial court properly found that Borton had committed other offenses and violated probation. However, Borton's history of criminal activity was limited to juvenile adjudications. These adjudications would have constituted the misdemeanor offenses of Conversion and Public Intoxication if they had been committed by an adult. He violated probation by ignoring a curfew and becoming intoxicated in public. Neither of these offenses is violent. Given Borton's youth, his limited prior contacts with the justice system, and the non-violent nature of his prior offenses, the sentencing process should be focused more upon rehabilitation than upon retribution. We conclude that the fifty-year sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Accordingly, we revise Borton's sentence to the presumptive sentence of thirty years.

### Conclusion

In light of the foregoing, the trial court properly denied Borton's motion to suppress his statements to police. Borton was improperly convicted of Attempted Robbery because he was also convicted of Conspiracy to Commit Robbery. Borton's fifty-year sentence for Conspiracy to Commit Robbery is revised to the thirty-year presumptive sentence for a Class A felony conviction.

The conviction for Conspiracy to Commit Robbery is affirmed; the conviction for Attempted Robbery is vacated.

KIRSCH, J., and BROOK, J., concur.