**Sam MATSHAZI, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0307–CR–354.

Court of Appeals of Indiana.

March 22, 2004.

Transfer Denied April 22, 2004.

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Sam Matshazi (Matshazi), appeals his sentence for Counts I and II, rape, Class B felonies, Ind.Code § 35–42–4–1.

We affirm.

### ISSUES

Matshazi raises one issue on appeal, which we restate as follows:

1. Whether the trial court properly evaluated his aggravating and mitigating factors when it imposed an enhanced sentence; and

2. Whether his sentence is appropriate in light of the nature of the offense and character of the offender.

### FACTS AND PROCEDURAL HISTORY

In the spring of 2002, A.D. was a resident at New Hope assisted living home (New Hope) operated by St. Vincent's Hospital and located at 5444 North Arlington Avenue in Indianapolis, Indiana. She is twenty-seven years old and has had cerebral palsy since birth. A.D. is unable to feed herself, dress herself, or move in and out of her wheelchair on her own. A.D. also has problems communicating, and psycho-educational evaluations have revealed that she has an overall mental age of a six to eight year old.

During the spring of 2002, Matshazi was a part-time employee at St. Vincent's New Hope facility where A.D. was living. While working at New Hope, Matshazi had sexual intercourse with A.D. on two occasions. Specifically, on April 6, 2002, during his shift, Matshazi showered A.D. and rubbed her genital area. Approximately fifteen minutes later, Matshazi brought A.D. into her bedroom and continued rubbing her genital area. Later that afternoon, Matshazi entered A.D.'s room, removed her clothes, and began rubbing her genital area again. Matshazi then had sexual intercourse with A.D. Afterwards, Matshazi cleaned A.D. up and put her clothes back on her, and placed her back in her wheelchair.

On May 29, 2002, Matshazi worked the evening shift at New Hope. After the permanent staff members left for the evening, Matshazi entered A.D.'s room, removed her clothing, and again forced her to have sex. Matshazi told A.D. that he would kill her if she told anyone what happened between the two of them. In October of 2002, A.D. began to complain to the staff at New Hope about severe stomach pains.

An on-call nurse at New Hope advised that A.D. should be taken to the hospital. While at the hospital, the doctors discovered that A.D. was pregnant.

On October 7, 2002, Indianapolis Police Officer Daryl Harden (Officer Harden) was dispatched to New Hope to conduct a rape investigation. While at New Hope, Officer Harden spoke to several of the employees. Officer Harden then spoke by phone to Sex Crime Detective Laura Russell (Detective Russell). Detective Russell subsequently drove to New Hope and also talked with the employees. Detective Russell was responsible for interviewing the male employees. When Detective Russell interviewed Matshazi, she informed him that A.D. stated that a man named Sam forced her to have sexual intercourse on two separate occasions. Detective Russell informed Matshazi that he, along with another employee whose first name is Sam, were under investigation. She then asked Matshazi if he had ever had any type of sexual contact with A.D. Matshazi responded negatively. Afterward, Detective Russell informed Matshazi that both he and the other employee named Sam were suspended from employment at the New Hope facility. Lastly, Detective Russell obtained blood samples from Matshazi, the other employee under investigation, and A.D.

On January 28, 2003, Detective Russell was notified that A.D. was transported to Vincent Family Life Center because she was going into labor. Detective Russell was present when A.D. gave birth by caesarean section, and requested that a blood sample from A.D.'s umbilical cord be taken. The blood sample was then tested in order to determine the paternity of the child. On February 11, 2003, Detective Russell received the paternity test results, which identified Matshazi as the father of A.D.'s child.

On February 12, 2003, the State filed an information against Matshazi charging him with Count I, rape, a Class B felony, I.C. § 35-42-4-1. On April 1, 2003, the State filed a Motion to Add a Count, adding Count II, rape, a Class B felony, I.C. § 35-42-4-1(a)(3). In its motion, the State argued that Matshazi knowingly or intentionally had sexual intercourse with A.D., when A.D. was so mentally disabled or deficient that consent by her to sexual intercourse could not have been given. On April 10, 2003, a hearing was held on the State's Motion to Add a Count. At the conclusion of the hearing, the trial court granted the State's motion. On April 24, 2003, a second blood sample was taken from Matshazi, which confirmed the test results of the first paternity test.

On May 19 through May 21, 2003, a jury trial was held. At the conclusion of the trial, the jury found Matshazi guilty as charged. On June 18, 2003, a sentencing hearing was held. At the hearing, the trial court stated the following:

> The [c]ourt is required under Indiana law to consider several statutory factors. The first is the risk that the person will commit another crime. And based upon the [c]ourt's evaluation of the evidence of the case, most specifically [Matshazi's] testimony, the [c]ourt is extremely concerned about the risk that [Matshazi] will commit another crime, and the [c]ourt bases that on [Matshazi's] description of these encounters with [A.D.], which defy not only logic but also fact. His description that she put her arm around his head, which she's utterly incapable of doing. And I guess I, I may digress, but I need to make it clear-well, I'll, I'll do that in a minute. So[,] I am very concerned not only that [Matshazi will] commit another crime, I'm very concerned that the crime, the victim of that crime will be like [A.D.], another

helpless and/or vulnerable person who's unable physically to defend themselves or verbally to articulate what's happened.

I then have to talk about the nature and circumstances of the crime committed under the law, and I'll first begin by the [c]ourt's own observations, as also supplemented by Mrs. Dixon's descriptions, of [A.D.'s] limitations. And I don't do this in any way to demean your daughter. I think it's very important for the people on the Court of Appeals who will likely be reviewing the sentence to know—they're going to see words on a piece of paper, and I've met the person, and I just want them to know what I've observed about [A.D.]. Physically[,] [A.D.'s] body is crippled. She cannot sit erect. She, her arms flail uncontrollable because she suffers from spasticity. Her hands are in a sort of clenched posture so that she does not have gripping ability, other than if her fingers might be rigidly gripped just through spasticity. You could probably put something in them, but she can't control the grasps on her hands. Her head moves uncontrollably on her body. She and does so more when she's upset than when she's calm. She, her speech is garbled, although I believe we all could discern the difference between yes and no. But it took the knowledge of the context of the statement she was making to realize that she was saying yes or no. Perhaps somewhat in contrast with that, one of the most poignant moments of the trial was when she was asked, in fact on cross examination, do you know why we're here. And she said in her voice, Sam raped me. And you could tell that that's what [A.D.] said. And it was somewhat surprising to me, but I could discern it at the time. [A.D.'s] mannerism is childlike in terms of her, what makes her laugh. You can, her intellec-

tual level does not bespeak any age beyond the six to eight year upper range the doctors shared with us. And neither does her physical appearance, frankly, seem congruent with her, with her actual chronological age. [A.D.] could look like she's fifteen, sixteen years old. In part that's because she's small, and because her body isn't physically developed as it would be if she were a mature person. I asked her mom to describe some of the things that she could do to make it clear that this woman could not caress someone. This woman could not pull someone to them, a grown man especially, in an embrace. And so I, I want to set that setting about [A.D.], which is all visibly discernable upon immediately viewing [A.D.]. So, I want to set that setting to talk about the first rape that occurred in April.

I want to note that this is the first time [ ] Matshazi ever cared for [A.D.]. This isn't as though—and when you look at his defense, proffered defense of consent, this isn't as though this is a young woman with whom he's developed a relationship because he cared for her over time and saw her inner beauty, which I do know exists, but it exists in a childlike way. This is someone who upon, within an hour of coming to the home has sexual intercourse with a severely disabled girl, and by his own admission puts a wheelchair in front of the door so no one can come in. The State cross[-]examined [ ] Matshazi about when surrounding the acts of physical, or sexual intercourse she was diapered. Because I think that's a really significant fact about the, the lack of consent and the force used in this circumstance, and it also is part of who [A.D.] is. So that was the first time. And I think the State also has aptly pointed out within the home [A.D.] was the least able to

communicate. As so the choice of [ ] Matshazi that day when he stood in the role of caretaker but acted more as a predator was to choose the most helpless. When I thought about [A.D.] over the months I thought how vulnerable. But that's not even a good enough word. It's helpless. She is a helpless human being physically. And I believe that choice was deliberate, not only because of her physical inability to resist, but because of her lack of verbal skills to communicate what happened to her. That's what I find about the nature and circumstances of that crime, and I don't really know what—I guess I'll get to that later.

All right, the next thing—with respect to the second act of rape, I would note it's the second meeting between [Matshazi] and [A.D.]. And, again, [A.D.'s] condition didn't improve, it didn't change, and she was just as helpless. I guess I have to add, although it's not clear which, because I think the baby was born pre-term, which of the two acts produced the child, but, in any event, had [A.D.] not become pregnant we may never have known about this. And all of the caretakers described, her regular caretakers described a change in her behavior, some concerns they had about her mood and about her behavior before the disclosure came. And the fact, the nature and circumstances of the crime are that this crime resulted in her becoming pregnant and this baby being born. And I have to think about the pain that's caused, physical pain that I think certainly can count. There's the physical pain of the two rapes themselves, but there are also, there's also the pain, she was in pain when they found out she was pregnant, because that's what prompted her to have to go to the hospital. There's the physical pain of her delivery. There's additional unnecessary surgery that she had to have because of this crime. And there's the emotional pain on so many levels it's difficult to elaborate. But[,] I will also try, because they're part of the nature and circumstances of this crime. One is that this child, which she really is mentally and somewhat physically, wants to be a mom and care for her baby, and she can't do so. And it's once again, and a reminder isn't a strong enough word, it's another slap in the face to [A.D.] about her limitations. All her life she's seen normal people do other things and known she couldn't do them, and this is yet another thing about a baby that in her innocence she loves.... I also want to note, that there could be, because of the nature and circumstances of this crime and the fact that I believe it was calculated to never be revealed because of the choice of victim, the possibility that this baby will suffer physically because she was on a difficult medication that would be harmful to a child during the course of her pregnancy before anyone knew that she was pregnant.... [A.D.] was at his mercy, and his choice was to not once but twice rape her.

(Transcript pp. 590–96). At the conclusion of the hearing, the trial court sentenced Matshazi to twenty years on both counts, to run consecutively.

Matshazi now appeals. Additional facts will be supplied as necessary.

## DISCUSSION

### I. *Standard of Review*

At the outset, we note that sentencing decisions are within the trial court's discretion, and will be reversed only upon a showing of abuse of discretion. *Powell v. State*, 751 N.E.2d 311, 314 (Ind. Ct.App.2001). The trial court's sentencing discretion includes the determination of

whether to increase presumptive penalties. *Madden v. State*, 697 N.E.2d 964, 967 (Ind. Ct.App.1998), *trans. denied.* In doing so, the trial court determines which aggravating and mitigating circumstances to consider, and is solely responsible for determining the weight to accord each of these factors. *Perry v. State*, 751 N.E.2d 306, 309 (Ind.Ct.App.2001). The sentencing statement must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating and mitigating; and (3) demonstrate that the aggravating and mitigating circumstances have been weighed to determine that the aggravators outweigh the mitigators. *Powell*, 751 N.E.2d at 315. We examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the sentence. *Id.* A sentence enhancement will be affirmed, if after due consideration of the trial court's decision, this court finds that the sentence was appropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *see Rodriguez v. State*, 785 N.E.2d 1169, 1174 (Ind.Ct.App.2003).

## II. *Imposition of an Enhanced Sentence*

Matshazi argues that he was improperly sentenced. Specifically, Matshazi claims that the trial court failed to properly balance the proffered mitigating and aggravating circumstances when imposing his consecutive sentences. As a result, Matshazi maintains that the trial court improperly relied on aggravating factors to enhance his sentence.

In the present case, Matshazi received twenty years on both Counts, to run consecutively. The presumptive sentence for a Class B felony is ten years, with not more than ten years added for aggravating circumstances or not more than four years subtracted for mitigating circumstances. *See* I.C. § 35–50–2–5. In support of its sentence, the trial court noted the following aggravating factors in its sentencing Order: (1) the likelihood that Matshazi would commit another crime; (2) the physical and emotional pain that A.D. had to endure; (3) Matshazi was in a position of trust with A.D.; (4) Matshazi's character; (5) the nature and circumstances of the crime; (6) A.D.'s loss of security and trust of others; and (7) Matshazi initially lied to the police and caused an innocent man to be subjected to an investigation. Additionally, the trial court noted the following mitigating factors: (1) the hardship imposed by his incarceration on his dependents and family. Matshazi now attempts to claim that the trial court relied on improper aggravators in enhancing his sentence. Also, Matshazi contends that the trial court erred by failing to attach any significant weight to his lack of prior criminal history as a mitigating factor.

### A. *Aggravating Circumstances*

Matshazi first argues that the trial court improperly relied on aggravating factors to enhance his sentence. In particular, Matshazi claims that the trial court improperly considered A.D.'s physical limitations when articulating the aggravating factors. Matshazi contends that because A.D.'s physical and mental limitations were an element of the charge, the trial court erred in considering A.D.'s limitations as an aggravator. However, we find Matshazi's argument without merit.

Our review of the record discloses that the trial court did not state that A.D.'s physical and mental limitations were an aggravator. Rather, in its oral sentencing statement, the trial court provided this court with a clear description of A.D.'s physical limitations throughout the trial. In doing so, the trial court noted that the

nature and circumstances of this crime was an aggravating circumstance. The trial court was not reciting the statutory elements of the crime; but rather was focusing on the particularized circumstances of the offense, *i.e.*, that A.D. was physically and mentally challenged.

 Nonetheless, Matshazi argues that the trial court improperly considered the physical and emotional pain that A.D. endured and A.D.'s loss of security and fear of others as an aggravating circumstance. Specifically, Matshazi contends that those aggravators are part of the natural and probable consequence of any rape, and therefore were improperly considered. Again, we find that Matshazi's argument is without merit.

Here, the record reveals that because of A.D.'s physical condition, she had to undergo additional and unnecessary surgery as a result of the crime. Further, the record shows that A.D. not only had to endure the pain of the two rapes themselves, but also had to experience the physical and emotional pain of delivering her child and then giving the baby up for adoption because she could not physically or mentally care for the child. Moreover, the record reflects that A.D. is now afraid of individuals who resemble Matshazi and is scared of her caretakers.

Our decisional law requires that the trial courts identify all "significant" aggravating circumstances. *See e.g.*, *Widener v. State*, 659 N.E.2d 529 (Ind.1995); *Hammons v. State*, 493 N.E.2d 1250 (Ind.1986). Significance varies based on the gravity, nature, and number of prior offenses as they relate to the current offense. *Wooley v. State*, 716 N.E.2d 919, 932. Based upon the gravity and nature of this offense, we find these aggravators significant. Accordingly, we conclude that the trial court did not err in attaching significant weight to these aggravating circumstances.

**B. *Mitigating Circumstances***

 Matshazi also contends that the trial court failed to attach any significant weight to his lack of prior criminal history. An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Firestone v. State*, 774 N.E.2d 109, 114 (Ind.Ct.App. 2002). Additionally, trial courts are not required to include within the record a statement that it considered all proffered mitigating circumstances, only those that is considered significant. *Id.* at 115.

In this case, we find that the record clearly supports the trial court's consideration of the proffered mitigating circumstances. However, after receiving and hearing all the evidence, the trial court declined to attach any significant weight to Matshazi's prior criminal history. Particularly, the trial court noted the following at the sentencing hearing regarding Matshazi's lack of prior criminal record:

> The prior criminal record at this point, in the [c]ourt's view, it's, it's one that the [c]ourt on appeal is usually quick to point out as a mitigator. Based upon the defendant's demeanor on the witness stand, his total, complete, and utter rationalization and justification for his behavior in this case, I have a significantly hard time believing this is the first time he's done something like this. And the State's investigation as shared with them, or the information they have is that perhaps prior to this he fondled another person. So while I have to say on paper he doesn't have a criminal history, I can't afford it the way the appellate courts would normally require, because based on my observations and his testimony in this case I think there's likely the possibility that there are un-

charged crimes for which he's obviously not been charged and certainly not been convicted, that have yet to surface.

(Tr. p. 597). As previously stated, a trial court does not err in failing to find a mitigating factor unless it is both significant and clearly supported by the record. *Firestone*, 774 N.E.2d at 114. Our review of the record reveals that the trial court properly considered this proffered mitigating circumstance, but nevertheless declined to attach any significant weight to it. Therefore, under these circumstances, we find that the trial court did not abuse its discretion in according no weight to Matshazi's prior criminal history.

### C. *Weighing of Aggravators and Mitigators*

In the instant case, the trial court properly identified mitigating circumstances in its sentencing order. As stated above, the mitigating circumstance was as follows: 1) the hardship incarceration would have upon Matshazi's dependents. It appears that the trial court considered this mitigator; however, based upon the significant aggravating factors identified by the trial court, the aggravators outweighed the mitigating circumstances. Therefore, the imposition of an enhanced sentence is justified.

With all of this in mind, it is our determination that the trial court did not abuse its discretion when sentencing Matshazi. *See Powell*, 751 N.E.2d at 314. Here, the trial court properly demonstrated that the aggravating and mitigating circumstances were weighed to determine that the aggravators outweighed the mitigators. *See id.* Therefore, we find that the trial court properly evaluated Matshazi's aggravating and mitigating circumstances when it imposed an enhanced sentence. Nevertheless, Matshazi also asserts that his sentence was inappropriate in light of the nature of the offense and the character of the offender. Therefore, we will address sentencing further in the following section under an inappropriate sentence analysis.

### III. *Inappropriate Sentence*

A sentence, which is authorized by statute, will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. App. R. 7(B); *Rodriguez*, 785 N.E.2d at 1174. When considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive penalties. *Id.* Trial courts may then consider deviation from the presumptive sentence based upon a balancing of the factors, which must be considered pursuant to I.C. § 35-38-1-7.1(a) together with any discretionary aggravating and mitigating factors found to exist. *Id.*

As previously mentioned, Matshazi was found guilty of two counts of rape, both Class B felonies. The presumptive sentence for a Class B felony is ten years, with not more than ten years added for aggravating circumstances or not more than four years subtracted for mitigating circumstances. *See* I.C. § 35-50-2-5. Here, the trial court sentenced Matshazi to the maximum sentence of twenty years for both of his convictions, to run consecutively. Now, Matshazi disputes the imposition of the maximum possible sentence by challenging the trial court's assessment of A.D.'s physical and mental condition and his lack of a prior criminal history. Specifically, Matshazi contends that his sentence was inappropriate given his lack of a prior criminal history.

When reviewing whether a defendant was properly sentenced, we consider whether the sentence is appropriate considering the "nature of the offense" and the "character of the offender." *See* App. R. 7(B). In the instant case, the trial court properly found that Matshazi com-

mitted a senseless and disturbing criminal act that resulted in trauma and pain to A.D. and her family. In particular, the record reveals that A.D. was physically and mentally challenged. In its sentencing statement, the trial court noted that A.D. is crippled and that she cannot sit erect. Matshazi raped A.D. on two occasions when he was the only caretaker at the New Hope home. Thus, Matshazi was in a position of trust with A.D. and she was dependent upon him to bathe, cloth, and transport her in and out of her wheelchair. In fact, Matshazi testified that he placed A.D.'s wheelchair in front of the door while he had sexual intercourse with her, so no one would come inside of the room.

The record also shows that A.D. endured physical as well as emotional pain associated with both rapes. Namely, because of A.D.'s physical condition she had to undergo additional and unnecessary surgery. Additionally, A.D. had to experience the physical pain of delivering her child, and the emotional pain of then giving the baby up because she could not physically or mentally care for her child. As shown above, the trial court properly weighed the aggravating and mitigating circumstances. Consequently, it is our determination that the trial court properly considered the nature of the offense when enhancing Matshazi's sentence. *See* App. R. 7(B).

In addition to the traditional balancing of aggravating and mitigating circumstances, we review the sentence to assure that it is constitutionally proportionate to the "character of the offender." *Borton v. State,* 759 N.E.2d 641, 648 (Ind. Ct.App.2001). This court is mindful of the principle that "the maximum sentence enhancement permitted by law should be reserved for the very worst offenses and offenders." *Id.* In the present case, the trial court properly found that Matshazi

did not have a prior criminal history. However, as shown above, the trial court failed to attach any significant weight to this proffered mitigator. In particular, the trial court noted, "based upon Matshazi's demeanor on the witness stand, his total, complete, and utter rationalization and justification for his behavior in this case, I have a significantly hard time believing this is the first time he's done something like this." (Tr. p. 597). Additionally, the records shows that when initially questioned about this crime, Matshazi lied to the police, which caused another innocent man to be subject to a criminal investigation and his employment was put in jeopardy.

Furthermore, the record reveals that during cross examination, when asked by the State what Matshazi found sexually arousing about A.D., he responded, "I wouldn't really say there was anything sexually arousing. I was sexually aroused when I fondled her there, there on [her] private part. That's the only time when I, I was sexually aroused. But most of the time I, actually I was sympathetic to [A.D.] for the way she was kind of demanding for, for sex. I, I, I kind of felt sympathetic towards her, too, because I thought that she, she, she really needed the sex." (Tr. p. 516). In response, the trial court noted its concern that Matshazi could again choose a vulnerable and helpless person who cannot speak or care for themselves and determine that they "really need sex." *Id.* Therefore, given Matshazi's character, the trial court concluded, and we agree, that there is a likelihood that Matshazi will commit another crime. *See* I.C. § 35–38–1–7.1(a). Based upon all of the above, we find that both the nature of the offense and the character of the offender support an enhanced sentence.

As we have previously stated, when reviewing sentences for reasonableness, we

are mindful of the principles that "the maximum sentence enhancement permitted by law should be reserved for the very worst offenses and offenders." *Borton,* 759 N.E.2d at 648. We find that Matshazi and his offenses fall into this category. Therefore, with the above in mind, we find that the maximum sentence imposed by the trial court was appropriate.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly evaluated Matshazi's aggravating and mitigating circumstances, and therefore, the enhanced sentence was not inappropriate.

Affirmed.

DARDEN, J., and BAILEY, J., concur.