**Brian FIRESTONE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0201–CR–39.

Court of Appeals of Indiana.

Aug. 28, 2002.

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Brian Firestone appeals his convictions and sentences for sexual battery, a Class C felony, conspiracy to commit murder, a Class A felony, kidnapping, a Class A felony, and criminal confinement, a Class B felony. We affirm.

## Issues

The restated issues are:

I. whether there is sufficient evidence to support the kidnapping and criminal confinement convictions;

II. whether Firestone's convictions for conspiracy to commit murder and kidnapping violate the Double Jeopardy Clause of the Indiana Constitution; and

III. whether the trial court abused its discretion in sentencing Firestone to an aggregate sentence of eighty-eight years.

## Facts

The evidence most favorable to the convictions reveals that Firestone and his friend and co-worker Jamie Robinson wanted to take a vacation in the mountains of the western United States, but lacked an adequate vehicle to make such a trip. Firestone and Robinson conceived a plan to steal the car of a seventeen-year-old co-worker, A.G., so they could make the trip. On the evening of December 9, 2000, Firestone asked A.G. to give him a ride home from work and offered to show A.G. around his new house. Robinson, who had been given permission to leave work early, was lying in wait for A.G. at Firestone's house. When A.G. entered the house, Robinson tackled her and threw her down onto a bed while holding a knife she recognized as belonging to Firestone. A.G. managed to take the knife away from Robinson, but Firestone talked her into giving it to him and he placed it on a dresser near the bed. Firestone then held A.G. down while Robinson tied her arms and legs to the bed and put duct-tape over her mouth. Firestone and Robinson removed A.G.'s clothes and Robinson cut off her bra with the knife.

Firestone began fondling A.G.'s breasts and vagina, removing her tampon because it was bothering him. He also rubbed A.G.'s thighs and genital area with a massager. Afterwards, Firestone began packing A.G.'s car for his and Robinson's trip. When he returned to the bedroom, he found Robinson attempting to have intercourse with A.G. Firestone chastised Robinson for this because he was eager to leave on their trip. Firestone agreed, however, to a plan to take A.G. on the trip and use her as a "sex slave" in the mountains. He also agreed to eventually kill her when they were done with her so she could not incriminate them, possibly with a .22 rifle found in the car's trunk, and to chop up her body with an axe. Tr. p. 393.

Firestone and Robinson then untied A.G., gave her some clothes, and took her to the car, where she was placed in the back seat. The back seat of the car had been deliberately packed full and the child safety locks had been activated to make it difficult for A.G. to escape. The knife that had previously been used against her was on the car's center console. Firestone drove the car west on Interstate 70 until experiencing a mechanical problem after accidentally driving off the road just west of St. Louis. Firestone and Robinson contacted a tow truck, whose driver refused to tow the car because the pair had no money. Shortly thereafter, an officer of the St. Peters, Missouri, Police Department happened upon the vehicle while on patrol and stopped to see if he could be of assistance. Firestone and Robinson had told A.G. to sit in the car's driver's seat because neither of them had a valid driver's license. The officer became suspicious after noting A.G.'s youth and her responses to some of his questions. He asked to speak with A.G. at the front of the car, and she then told the officer what had happened. Noticing marks on A.G.'s wrists consistent with her having been bound, the

officer called for assistance and held Firestone and Robinson at gunpoint until another officer arrived and they were placed under arrest. Firestone and Robinson both later confessed their involvement in A.G.'s abduction to local police and the FBI, although each attempted to label the other as the prime instigator of the plan.

The State charged Firestone with sexual battery, conspiracy to commit murder, kidnapping, criminal confinement, auto theft, and robbery. After a jury trial conducted on October 29–November 1, 2001, Firestone was acquitted of robbery but convicted of all the other counts. The trial court entered judgment of convictions for all five of those counts, but merged the auto theft and confinement convictions with the kidnapping conviction for sentencing purposes. It imposed sentences of eight years for sexual battery, thirty years for conspiracy to commit murder, and fifty years for kidnapping, all to run consecutively for an aggregate sentence of eighty-eight years. Firestone now appeals.[1]

### Analysis

#### I. Sufficiency of the Evidence

First, Firestone asserts there is insufficient evidence to support his convictions for kidnapping and criminal confinement as a Class B felony. In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *Love v. State*, 761 N.E.2d 806, 810 (Ind.2002). We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

■ The State charged Firestone with kidnapping under Indiana Code Section 35–42–3–2(a)(2), which defines the crime as knowingly or intentionally confining another person while hijacking a vehicle. Firestone contends there is insufficient evidence he "hijacked" A.G.'s car within the meaning of the kidnapping statute because "no one was in the [car] when the car was taken," but rather A.G. was forced into the car. Appellant's Br. p. 19. We disagree. Our supreme court has stated:

> We discern that the legislature had it in mind in enacting this part of the kidnapping statute to prevent persons from being exposed to that special danger, that increased probability of injury or death, which results when one is seized and confined or transported in a commandeered vehicle. The message intended for the would-be wrong doer, is that if you are going to steal or commandeer a vehicle, let the people in it go *and don't force people into it against their will.*

*Wilson v. State*, 468 N.E.2d 1375, 1378 (Ind.1984) (emphasis added). Firestone argues that the highlighted portion of this quote is dicta and, essentially, that we are not bound by it. We conclude the statement was essential to resolution of the case and thus was not dicta. In *Wilson*, the victim was returning to his car when the defendant forced him into it against his will. *Id.* at 1376–77. In order to affirm the defendant's kidnapping conviction our supreme court was required to conclude that "hijacking" a vehicle includes forcing someone into the vehicle against their will and then exerting unauthorized control of the vehicle. *Id.* at 1378. Thus, in this case it is irrelevant that A.G. was forced into the car instead of already being in the car when Firestone began exerting unauthorized control over the car. At the very

---

1. Firestone does not challenge his auto theft conviction in any way.

least, A.G. continued to be confined in the car by force or threat of force while Firestone was exerting unauthorized control of the vehicle by driving it, regardless of whether the car was initially unoccupied. There is sufficient evidence to support Firestone's kidnapping conviction.

■ Firestone also contends there is insufficient evidence to support his criminal confinement conviction. In order to be convicted of this crime as a Class B felony, as Firestone was charged, the State had to prove he knowingly or intentionally removed A.G. by force or threat of force from one place to another (e.g., Indiana to Missouri) while armed with a deadly weapon. Ind.Code § 35–42–3–3(2). Firestone argues there is insufficient evidence he was armed with a deadly weapon while he transported A.G. from Indiana to Missouri. Again, we disagree. Initially, Robinson used a knife belonging to Firestone to attempt to subdue A.G. and to cut off her bra. This knife was later placed in the car and was on the center console while Firestone drove. This court has held that enhancement of an offense based upon the defendant's being armed with a deadly weapon is justified "if the weapon was sufficiently accessible to the defendant so as to exert a coercive influence upon the victim during the offenses in question." *Grafe v. State*, 686 N.E.2d 890, 895 (Ind. Ct.App.1997), *trans. denied.* The jury in this case reasonably could have inferred that, given the manner in which the knife was previously used against A.G. and its placement within Firestone's reach in the vehicle, the knife exerted a coercive influence upon A.G. during her confinement in the vehicle. There is sufficient evidence to support Firestone's Class B felony criminal confinement conviction.

## II. Double Jeopardy

■ Firestone's next argument is that his convictions for kidnapping and conspiracy to commit murder violate the Indiana Constitution's prohibition against double jeopardy, because the overt act alleged as a necessary element of conspiracy to commit murder was the "confining" of A.G.App. p. 48. In *Richardson v. State*, our supreme court held "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d 32, 49 (Ind.1999).

After this case was fully briefed, however, our supreme court handed down its decision in *Guyton v. State*, 771 N.E.2d 1141 (Ind.2002). There, the majority analyzed the defendant's state constitution double jeopardy claim solely under the five traditional categories of double jeopardy noted by Justice Sullivan in his concurrence in *Richardson*.[2] *Guyton*, 771 N.E.2d at 1143. Those categories are: (1) "[c]onviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished"; (2) "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished"; (3) "[c]onviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished"; (4) "[c]onviction and punishment for an enhancement of a

2. The court recited the *Richardson* majority's double jeopardy formulation, but then proceeded to list Justice Sullivan's five categories

and concluded that the defendant's double jeopardy claim "does not succeed under any of the above." *Guyton*, 771 N.E.2d at 1143.

crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished"; and (5) "[c]onviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 55–56 (Sullivan, J., concurring).

We observe that category five is essentially a subset of category three; a person cannot be punished for conspiracy and another crime where that other crime also constitutes the overt act of the conspiracy, which is a slightly different but more specific way of saying a person cannot be punished for a crime that constitutes an element of another crime. Both categories three and five are potentially implicated here, but neither requires vacation of Firestone's conspiracy to commit murder or kidnapping convictions.

Justice Sullivan observed that a category three double jeopardy concern does not arise "in situations where the subject behavior or harm is either separate from or more extensive than that necessary to constitute the element of the first crime." *Id.* at 55. He went on to cite cases where our supreme court affirmed rape or attempted rape and criminal confinement convictions where the confinement extended beyond that necessary to accomplish the rape. *Id.* at 55–56. Here, two separate acts of confinement took place: A.G.'s being tied to the bed in Firestone's house, and her confinement in the car. The confinement in the car was all that was necessary to accomplish the criminal act of kidnapping via hijacking. At closing argument, the prosecutor asked the jury to consider A.G.'s being tied to the bed as the confinement that was the overt act in furtherance of the conspiracy to murder her. This particular

act of confinement went beyond what was necessary to convict Firestone of kidnapping and is properly viewed as a separate criminal act. For similar reasons, A.G.'s confinement in the car as evidence of her kidnapping does not constitute "the very same act" as the overt act that was an element of the conspiracy to commit murder conviction, which the prosecutor asked the jury to conclude was her being tied to the bed. There is no double jeopardy violation in this case.

### III. Sentencing

Finally, Firestone contends the trial court ignored mitigating circumstances clearly supported by the record and otherwise erred in sentencing him to an aggregate term of eighty-eight years. Sentencing lies within the discretion of the trial court. *Bailey v. State*, 763 N.E.2d 998, 1004 (Ind.2002). Thus, we review sentencing decisions on appeal only for an abuse of discretion. *Corbett v. State*, 764 N.E.2d 622, 630 (Ind.2002). "When enhancing a sentence, a trial court must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reasons why each circumstance is aggravating or mitigating; and (3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances." *Bailey*, 763 N.E.2d at 1004 (quoting *Charlton v. State*, 702 N.E.2d 1045, 1052 (Ind.1998)).

"An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999). Additionally, trial courts are not required to include within the record a statement that it considered all proffered mitigating circumstances, only those that it considered significant. *Widener v. State*,

659 N.E.2d 529, 534 (Ind.1995). "If a mitigating circumstance is not raised by the defendant at trial, it is not available on appeal." *Lemos v. State*, 746 N.E.2d 972, 976 (Ind.2001).

 Here, the trial court noted two aggravating circumstances that warranted enhancement of the sexual battery and kidnapping sentences and serving the sexual battery, conspiracy to commit murder, and kidnapping sentences consecutively. First, it noted Firestone's criminal history, which consisted of convictions in 1993 for several burglaries in Nebraska. Second, it found the nature and circumstances of the present crimes to be aggravating. Firestone does not directly challenge these aggravating circumstances, but contends the trial court failed to balance them against two mitigating circumstances clearly supported by the record: imprisonment will impose a hardship upon Firestone's two children, aged two and seven; and Firestone's steady employment history. Firestone did not ask the trial court to consider these factors at the sentencing hearing, however. Instead, defense counsel presented no evidence and essentially made no argument other than asking the trial court "to do what's right. And he obviously is gonna get a bunch of time. He knows that." Tr. p. 511. These two alleged mitigators are not available to Firestone on appeal. *See Lemos*, 746 N.E.2d at 976.

We conclude these factors now presented by Firestone are insignificant in any event. Even the minimum executed prison term that Firestone could have received, twenty years (ten with good time credit),[3] unfortunately would have resulted in a loss of financial support to his children for a significant period of time. We sympathize with Firestone's children and their mother losing a potential means of support, but that loss results from Firestone's egregious criminal conduct, not from the trial court's enhancement of Firestone's sentence. Under the circumstances, this proposed mitigating circumstance is not significant. *See Battles v. State*, 688 N.E.2d 1230, 1237 (Ind.1997) (declining to attach any significant weight to proffered mitigating circumstance of hardship to dependents where difference between presumptive and enhanced sentence would not impose much, if any, additional hardship on the child).

Firestone also contends the trial court should have considered his steady work history as an indicia of good character. Again, we conclude this proposed mitigator is not significant in this case. This proffered evidence of good character pales in comparison to the evidence of Firestone's bad character: planning the kidnapping and murder of a seventeen-year-old girl solely for the sake of stealing her car so he and his friend could take a trip, with the added plan of using her as a "sex slave" before she was to be killed. The nature and circumstances of these crimes demonstrate a disturbing lack of respect for other human beings, making Firestone's claim of good character based upon his work history to be insignificant. The trial court did not abuse its discretion in sentencing Firestone.

### Conclusion

There is sufficient evidence to support Firestone's kidnapping and Class B felony criminal confinement convictions. He is not subjected to double jeopardy because

---

3. Indiana Code Section 35–50–2–2(b) precludes trial courts from suspending that portion of a sentence in excess of the minimum sentence when the crime committed was a Class A felony and the person has a prior unrelated felony conviction, or the crime committed was kidnapping. Either situation applies to Firestone, and the minimum sentence for a Class A felony is twenty years. Ind.Code § 35–50–2–1(c)(2).

of his conspiracy to commit murder and kidnapping convictions. Finally, the trial court did not abuse its discretion in sentencing Firestone to eighty-eight years. We affirm in all respects.

Affirmed.

BAKER, J., and VAIDIK, J., concur.