David SIMMONS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A02–0401–CR–20.

Court of Appeals of Indiana.

Sept. 9, 2004.

Transfer Denied Nov. 23, 2004.

S. Neal Ziliak, Noblesville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, David Lee Simmons (Simmons), appeals his sentence for Count I, kidnapping, a Class A felony, Ind.Code § 35–42–3–2(a)(2); Count II,

kidnapping, a Class A felony, I.C. § 35–42–3–2(a)(3); Count III, conspiracy to commit kidnapping, a Class A felony, I.C. § 35–42–3–2(a)(3); Count VIII, escape, a Class B felony, I.C. §. 35–44–3–5(a); Count IX, escape, a Class B felony, I.C. § 35–44–3–5(a); Count X, conspiracy to commit escape, a Class B felony, I.C. § 35–44–3–5(a); Count XI, battery resulting in serious bodily injury, a Class C felony, I.C. § 35–42–2–1(a)(3); Count XII, battery by means of a deadly weapon, a Class C felony, I.C. § 35–42–2–1(a)(3); and Count XIII, battery resulting in bodily injury, a Class D felony, I.C. § 35–42–2–1(a)(2)(J).

We affirm.

### ISSUE

Simmons raises one issue on appeal, which we restate as follows: whether the trial court properly sentenced him.

### FACTS AND PROCEDURAL HISTORY

On November 19, 2001, Simmons was being detained in the Hamilton County Juvenile Detention Facility (detention facility). Simmons had been detained there since his arrest on October 6, 2001, for a probation violation and pending charges for receiving stolen property, a Class D felony, if committed by an adult, and operating while intoxicated, a Class A misdemeanor, if committed by an adult. During this month of incarceration, Simmons along with Justin LeMasters (LeMasters), John Menke, Jr. (Menke), and Christopher Woolen (Woolen), (collectively, "the escapee inmates"), devised and initiated a plan to escape from the detention facility.[1]

According to their escape plan, the four men would wait until a weekend when only two guards would be working instead of the usual number of five guards on duty.

The escapee inmates planned on creating a diversion, which would send one officer into the cellblock area, so that they could "take out" whoever was in the control room. (Transcript p. 330). The escapee inmates planned to rob the guards and take any money and property in the commissary funds at the detention facility to sustain them while they were outside of the facility. Additionally, they planned to rob a drug dealer for money and drugs to sell. Simmons proposed that they relocate to his family's summer home in Michigan and start new lives. The escapee inmates further planned on securing guns for protection after their escape.

However, on November 19, 2001, only two guards, Officer Toby Warner (Officer Warner) and Officer Ann Davidson (Officer Davidson), remained on duty at the detention facility. Thus, the escapee inmates decided to advance their plan and escape at that time. At approximately 6:10 p.m., Officer Warner observed an inmate crying and leaving the recreation area to go to his cell. Officer Warner informed Officer Davidson that he was going to check on the inmate and she agreed that she would cover the control room until he returned. Officer Warner left through a secure door, J6, and walked past Simmons and the other escapee inmates to enter the cell of the crying inmate. Although the door was made to be secured, the officers did not strictly enforce it and the door was usually left propped open.

Simmons, Woolen, and LeMasters waited until Officer Warner left the area and then proceeded through the propped-open door and entered an unsecured area where they attacked Officer Davidson. Simmons thought that he would be able to subdue Officer Davidson by administering a "one hit knock out in the right spot." (Appel-

---

**1.** We note that there was also a fifth inmate, Christopher Kennedy, who devised the plan; however, the did not act on the plan and did not testify at trial.

lant's App. p. 512). However, Simmons and the other escapee inmates used numerous weapons in the room, including a one pound steel police flashlight, a thirteen pound computer printer, a glass coffee pot, a five gallon water bottle, and their fists and feet to subdue Officer Davidson. Eventually, Officer Davidson was life-lined to Methodist Hospital in Indianapolis, Indiana in a coma and suffered serious injury to her hands, eyes, and face. Officer Davidson additionally suffered permanent loss of sense of smell and taste, and a reduction of strength and flexibility in her right hand. She also had to undergo several reconstructive surgeries to rebalance her facial structure.

After Officer Davidson was down and unconscious, the escapee inmates waited for Officer Warner to re-enter through J6. LeMasters positioned himself in the bathroom right inside of the door of J6 where Officer Warner would re-enter. When Officer Warner entered the door, he noticed Simmons leaving the control room where Officer Davidson lay unconscious. Officer Warner asked Simmons why he was in this restricted area. At that point, Officer Warner noticed the other escapee inmates in the room and when he turned to look at them he was hit in the head by a computer monitor. Officer Warner identified LeMasters as the individual that hit him with the computer monitor. LeMasters continuously slammed the computer monitor onto Officer Warner until he fell to the floor; Simmons then began to use his feet to kick Officer Warner as he went down. Next, Woolen came out of another room and grabbed Officer Warner's legs, holding him down as Simmons used the flashlight to beat Officer Warner on the head. Officer Warner pleaded with Simmons and the other escapee inmates to stop beating him, but nonetheless, the escapee inmates continued to inflict more blows to Officer Warner.

Simmons and LeMasters opened the door to the control room and Officer Warner saw Officer Davidson lying motionless on the floor with a puddle of blood on the floor from her head and body. Simmons yelled, "We want out." (Tr. p. 271). Officer Warner told the escapee inmates that he would get up and operate the control switches to let them out; however, Simmons and LeMasters ordered him, "Don't get up" or they would "fucking kill me if I got up off of the floor." (Tr. pp. 271–72). Officer Warner subsequently told the escapee inmates the pass code and they fled to a nearby apartment complex where the police apprehended them shortly thereafter.

The other inmates in the detention facility knew that something was going on because they heard loud noises and Officer Warner's screams and pleadings. While Simmons and LeMasters were in the control room with Officer Davidson, the inmates were peering through the glass of the control room. Inmates J.L.F., B.B., and E.D. all went to peer into the glass at different times. When inmate J.L.F. looked in, he saw Simmons at the control panel and LeMasters hitting and kicking Officer Davidson with a flashlight. When inmate B.B. looked into the glass, he saw Simmons assisting LeMasters in kicking Officer Davidson while she was on the floor. Similarly, when inmate E.D. looked in, he saw Simmons again at the control panel and LeMasters, with the flashlight, kicking Officer Davidson. All three inmates described the events as the worst thing they had ever seen happen to another person.

After being arrested, the four escapee inmates were waived into adult court. LeMasters, Woolen, and Menke accepted a plea bargain instead of going to trial. Specifically, LeMasters pled guilty to kid-

napping, a Class A felony; conspiracy to commit kidnapping, a Class A felony; and escape, a Class B felony. The trial court sentenced LeMasters to thirty-five years for kidnapping; thirty-five years for conspiracy to commit kidnapping, to run consecutive; and twenty years for escape, to be served concurrently. Thus, LeMasters was sentenced to a total of seventy years in the Indiana Department of Correction (DOC). Woolen pled guilty to the same charges as LeMasters and received thirty years for kidnapping, thirty years for conspiracy, with consecutive service, and twenty years for escape, with concurrent service. Therefore, Woolen was sentenced to sixty years in the DOC. Menke pled guilty to escape, a Class B felony; and battery with injury, a Class B felony. He was sentenced to twenty years for escape and twenty years executed, with five years suspended, for battery, with consecutive service. Thus, Menke was sentenced to thirty-five years in the DOC.

On November 30, 2001, the State filed an information against Simmons charging him with Count I, kidnapping, a Class A felony, I.C. § 35–42–3–2(a)(3); Count II, kidnapping, a Class A felony, I.C. § 35–42–3–2(a)(3); Count III, conspiracy to commit kidnapping, a Class A felony, I.C. § 35–42–3–2(a)(3); Count IV, attempted murder, a Class A felony, I.C. § 35–42–1–1(1); Count V, aggravated battery, a Class B felony, I.C. § 35–42–2–1.5; Count VI, aggravated battery a Class B felony, I.C. § 35–42–2–1.5(1); Count VII, aggravated battery, a Class B felony, I.C. § 35–42–2–1.5(2); Count VIII, escape, a Class B felony, I.C. § 35–44–3–5(a); Count IX, escape, a Class B felony, I.C. § 35–44–3–5(a); Count X, escape, a Class B felony, I.C. § 35–44–3–5(a); Count XI, battery resulting in serious bodily injury, a Class C felony, I.C. § 35–42–2–1(a)(3); Count XII, battery by means of deadly weapon, a Class C felony, I.C. § 35–42–2–1(a)(3); and Count XIII, battery resulting in bodily injury, a Class D felony, I.C. § 35–42–2–1(a)(2)(J).

On January 11, 2002, Simmons filed a Motion to Dismiss Counts III, IV, and X. On January 18, 2002, the State filed its Response to Motion to Dismiss and State's Motion for Leave to Amend Information. In its motion, the State asked the trial court to deny Simmons' Motion to Dismiss as to Count III, and asked the trial court for leave to amend Counts III and X. On January 29, 2002, the trial court denied Simmons' Motion to Dismiss Count IV, and granted the State's Motion for Leave to Amend Counts III and X of the charging information. On February 1, 2002, the State filed its Amended Information, charging Simmons with Count III, conspiracy to commit kidnapping, a Class A felony, I.C. § 35–42–3–2(a)(3); and Count X, conspiracy to commit escape, a Class B felony, I.C. § 35–44–3–5(a).

On July 21, through July 23, 2002, a jury trial was held. At the conclusion of the trial, the jury found Simmons guilty of Count I, kidnapping, a Class A felony; Count II, kidnapping, a Class A felony; Count III, conspiracy to commit escape, a Class B felony; Count VIII, escape, a Class B felony; Count IX, escape, a Class B felony; Count X, conspiracy to commit escape, a Class B felony; Count XI, battery resulting in serious bodily injury, a Class C felony; Count XII, battery by means of deadly weapon, a Class C felony; and Count XIII, battery resulting in bodily injury, a Class D felony. The jury found Simmons not guilty of Counts IV, V, VI, and VII.

On October 31, 2003, a sentencing hearing was held. After considering the evidence and the Pre–Sentence Report, the trial court sentenced Simmons to the following:

Count I: Thirty-five years

Count II: Thirty-five years, consecutive with Count I

Count III: Merged with Counts I and II

Count VIII: Twelve years, consecutive with Count II

Count IX: Twelve years, concurrent with Count VIII

Count X: Merged with Counts VIII and IX

Count XI: Six years, consecutive with Counts VIII and IX

Count XII: Six years, consecutive with Counts XI

Count XIII: Three years, concurrent with Count XI

(Tr. p. 762–63). Thus, Simmons was sentenced to an aggregate term of 94 years at the DOC, with credit for 712 days served.

Simmons now appeals. Additional facts will be supplied as necessary.

## DISCUSSION

### I. *Imposition of Enhanced and Consecutive Sentences*

#### A. *Standard of Review*

■ At the outset, we note that sentencing decisions are within the trial court's discretion, and will be reversed only upon a showing of abuse of discretion. *Powell v. State,* 751 N.E.2d 311, 314 (Ind. Ct.App.2001). The trial court's sentencing discretion includes the determination of whether to increase presumptive penalties. *Madden v. State,* 697 N.E.2d 964, 967 (Ind. Ct.App.1998), *trans. denied.* In doing so, the trial court determines which aggravating and mitigating circumstances to consider, and is solely responsible for determining the weight to accord each of these factors. *Perry v. State,* 751 N.E.2d 306, 309 (Ind.Ct.App.2001). The sentencing statement must: (1) identify significant aggravating and mitigating circumstances;

(2) state the specific reason why each circumstance is aggravating and mitigating; and (3) demonstrate that the aggravating and mitigating circumstances have been weighed to determine that the aggravators outweigh the mitigators. *Powell,* 751 N.E.2d at 315. We examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the sentence. *Id.* A sentence enhancement will be affirmed, if after due consideration of the trial court's decision, this court finds that the sentence was appropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *see Rodriguez v. State,* 785 N.E.2d 1169, 1174 (Ind.Ct.App.2003).

### B. *Imposition of an Enhanced Sentence*

■ Simmons argues that he was improperly sentenced. Specifically, Simmons contends that the trial court did not give sufficient weight to a substantial mitigating circumstance. Additionally, Simmons alleges that the trial court improperly applied consecutive sentences for four of his convictions. As a result, Simmons asserts that his ninety-four years executed sentence imposed by the trial court is inappropriate.

In the present case, Simmons received ninety-four years for his convictions. As previously stated, Simmons received the following sentence for each of his convictions:

Count I, kidnapping, a Class A felony: Thirty-five years

Count II, kidnapping, a Class A felony: Thirty-five years, consecutive with Count I

Count III, conspiracy to commit kidnapping, a Class A felony: Merged with Counts I and II

Count VIII, escape, a Class B felony: Twelve years, consecutive with Count II

Count IX, escape, a Class B felony: Twelve years, concurrent with Count VIII

Count X, conspiracy to commit escape, a Class B felony: Merged with Counts VIII and IX

Count XI, battery resulting in serious bodily injury, a Class C felony: Six years, consecutive with Counts VIII and IX

Count XII, battery by means of a deadly weapon, a Class C felony: Six years, consecutive with Counts XI

Count XIII, battery resulting in bodily injury, a Class D felony: Three years, concurrent with Count XI

(Tr. p. 762–63). Thus, Simmons was convicted of Class A, B, C, and D felonies. The presumptive sentence for a Class A felony is thirty years, with not more than twenty years added for aggravating circumstances and not more than ten years subtracted for mitigating circumstances. *See* I.C. § 35–50–2–4. The presumptive sentence for a Class B felony is ten years, with not more than ten years added for aggravating circumstances or not more than four years subtracted for mitigating circumstances. *See* I.C. § 35–50–2–5. The presumptive sentence for a Class C felony is four years, with not more than four years added for aggravating circumstances and not more than two years subtracted for mitigating circumstances. *See* I.C. § 35–50–2–6. Lastly, the presumptive sentence for a Class D felony is one and one-half years, with not more than one and one-half years added for aggravating circumstances and not more than one year subtracted for mitigating circumstances. *See* I.C. § 35–50–2–7. Thus, for each of his convictions the trial court enhanced Simmons' presumptive sentence; however,

we also note that the trial court did not apply the maximum sentence permitted by statute.

At the sentencing hearing, the trial court stated the following:

> As I said previously, I've read the presentence report prepared by our Probation Department, the addendum to that report, and [Simmons'] presentence memorandum, and all of the letters that were attached to both of those documents and written to the [c]ourt by individuals who may be seated here in the courtroom. I wanted to assure everyone involved that I've [thoroughly] read this material. I think I should also state for the record that I did, in fact, preside over the trial that took place that was concluded with the jury's verdict that led us to today's hearing.

(Transcript p. 761). Thereafter, in support of its sentence, the trial court noted the following aggravating factors: (1) Simmons recently violated conditions of probation at the time of the escape and was being detained due to probation violations; (2) Simmons had a history of criminal/delinquent activity; and (3) Simmons is in need of correctional rehabilitative treatment best provided by a penal facility. Additionally, the trial court noted the following mitigating factor: (1) Simmons' age at the time of the offense. Simmons now attempts to claim that the trial court erred by failing to attach any significant weight to the following proffered mitigating factor: Simmons' lesser role in the offense.

### C. *Mitigating Circumstance*

 Simmons argues that the trial court failed to attach any significant weight to his role in the crime as a mitigating factor. In particular, Simmons claims that he was less culpable in inflicting injury on Officer Davidson as compared to his co-conspirator, LeMasters, and therefore,

his sentence should be reduced. An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Firestone v. State*, 774 N.E.2d 109, 114 (Ind.Ct.App. 2002). Additionally, trial courts are not required to include within the record a statement that it considered all proffered mitigating circumstances, only those it considered significant. *Id.* at 114.

In the present case, Simmons maintains that the trial court should have considered the lesser role he played in the crime. We have previously held that a lesser role in the crime may be a mitigating factor. *Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind.1999); *Edgecomb v. State*, 673 N.E.2d 1185, 1199 (Ind.1996); *Widener v. State*, 659 N.E.2d 529, 534 (Ind.1995). Nevertheless, the State now counters that this proffered mitigating factor is disputed in the record and therefore the trial court is not required to consider it as mitigating. *See Firestone*, 774 N.E.2d at 114; *see also Battles v. State*, 688 N.E.2d 1230, 1236–37 (Ind.1997) (the trial court may not ignore mitigating circumstances clearly supported by the record).

In *Edgecomb*, though the defendant provided the information to her co-defendant that led to the murder of defendant's neighbor, she did not enter the victim's house and did not actively participate in the fatal beating. *Edgecomb*, 673 N.E.2d at 1193, 1199. In *Widener*, though the defendant shot the victim, he did not initiate the plan nor formulate the method that was used. *Widener*, 659 N.E.2d at 534. By contrast, the record of the present case discloses that Simmons was active in the planning and execution of the escape. Particularly, the record reflects that Simmons planned for the escape for at least one week prior to the escape. Our review of the record discloses that Simmons and the other escapee-inmates discussed several plans and methods of escape that they planned to initiate. The record also shows that Simmons anticipated attacking Officer Davidson within that week of planning, and was present in the control room while Officer Davidson was being attacked. In light of the magnitude of Simmons other involvement, the fact that LeMasters was more involved in beating Officer Davidson is not enough to be considered a significant mitigating factor.

Moreover, the jury found Simmons not guilty of Counts IV, V, VI, and VII, all of which involved charges for aggravated battery and attempted murder of Officer Davidson. Thus, the jury took into consideration Simmons' role in the attack on Officer Davidson. Consequently, the trial court did not sentence Simmons based upon these counts, rather Simmons' sentence reflects the jury's determination that as an accomplice, Simmons had some culpability for the injuries inflicted on Officer Davidson. As previously stated, a trial court does not err in failing to find a mitigating factor unless it is both significant and supported by the record. *Firestone*, 774 N.E.2d at 114. Therefore, we find that the trial court did not abuse its discretion in declining to attach any weight to Simmons' proffered mitigator. *See id.*

### D. *Weighing of Aggravators and Mitigator*

In the present case, the trial court properly identified one mitigating circumstance at the sentencing hearing. As stated above, the mitigating circumstance was as follows: (1) Simmons age at the time of the offense. It appears that the trial court considered this mitigator; however, based upon the three significant aggravating factors identified by the trial court, the trial court found that the aggravators outweighed the one mitigating circumstance.

Therefore, we find that the trial court's sentence for Simmons' convictions was justified.

With all of this in mind, it is our determination that the trial court did not abuse its discretion when sentencing Simmons. *See Powell,* 751 N.E.2d at 314. Here, the trial court properly demonstrated that aggravating circumstances existed to enhance Simmons' sentence and declined to attach any significant weight of some of Simmons' proffered mitigating circumstances. Thus, the trial court properly evaluated Simmons' aggravating and mitigating circumstances when it imposed his sentence. *See id.*

### E. Consecutive Sentences

■ Simmons also asserts that the trial court abused its discretion by imposing consecutive sentences on his convictions for Count III, conspiracy to commit kidnapping, a Class A felony; Count VIII, escape, a Class B felony; Count XI, battery resulting in serious bodily injury, a Class C felony; and Count XII, battery by means of a deadly weapon, a Class C felony. Specifically, Simmons alleges that because his actions regarding Officer Davidson and Officer Warner occurred within a matter of minutes, he did not have time to reflect on the heinous nature of his crime. As a result, Simmons maintains that the imposition of consecutive sentences was an abuse of discretion by the trial court.

In support of his argument, Simmons cites to this court's opinion in *Kien v. State,* 782 N.E.2d 398, 416 (Ind.Ct.App. 2003). In *Kien,* the defendant was convicted of two counts of child molestation by sexual intercourse. This court held that because the evidence was insufficient to establish that the sexual acts occurred at significantly different times with Kien having time to reflect upon the heinous nature of the crimes, the imposition of consecutive sentences was inappropriate. *Id.* Similar-

ly, Simmons argues that because the escape took place within a matter of minutes, he did not have time to reflect upon the nature of the offense he was committing. We find Simmons' reliance on *Kien* misplaced.

In particular, in *Kien,* the defendant was charged with two identical counts of child molestation with the same victim. *See id.* However, here, Simmons was charged with multiple crimes involving two victims. Additionally, the record reveals that Simmons planned his escape at least one week in advance and made an agreement to escape with the other escapee inmates. Thus, there was nothing unexpected or sudden about Simmons' plan to escape. Further, the record shows that Simmons' escape plan included an attack on two separate victims, *i.e.,* Officer Davidson and Officer Warner. The record reflects that Officer Davidson and Officer Warner were attacked individually and in two different rooms. Thus, the evidence clearly establishes that Simmons had time to think about the possible consequences that could result from the crime. *See Kien,* 782 N.E.2d at 416.

With this in mind, we find that the trial court did not abuse its discretion in ordering Simmons to serve consecutive sentences for his convictions for Count III, conspiracy to commit kidnapping, a Class A felony; Count VIII, escape, a Class B felony; Count XI, battery resulting in serious bodily injury, a Class C felony; and Count XII, battery by means of a deadly weapon, a Class C felony. *See id.* Nevertheless, Simmons also asserts that his sentence was inappropriate in light of the nature of the offense and the character of the offender. Therefore, we will address sentencing further in the following section under an inappropriate sentence analysis.

### II. Inappropriate Sentence

■ A sentence, which is authorized by statute, will not be revised unless it

is inappropriate in light of the nature of the offense and the character of the offender. App. R. 7(B); *Rodriguez*, 785 N.E.2d at 1174. When considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive penalties. *Id.* Trial courts may then consider deviation from the presumptive sentence based upon a balancing of the factors, which must be considered pursuant to I.C. § 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors found to exist.

As previously mentioned, Simmons was sentenced to ninety-four years for his convictions of Class A, B, C, and D felonies. The presumptive sentence for a Class A felony is thirty years, with not more than twenty years added for aggravating circumstances and not more than ten years subtracted for mitigating circumstances. *See* I.C. § 35–50–2–4. The presumptive sentence for a Class B felony is ten years, with not more than ten years added for aggravating circumstances or not more than four years subtracted for mitigating circumstances. *See* I.C. § 35–50–2–5. The presumptive sentence for a Class C felony is four years, with not more than four years added for aggravating circumstances and not more than two years subtracted for mitigating circumstances. *See* I.C. § 35–50–2–6. Lastly, the presumptive sentence for a Class D felony is one and one-half years, with not more than one and one-half years added for aggravating circumstances and not more than one year subtracted for mitigating circumstances. *See* I.C. § 35–50–2–7. Thus, for each of his convictions, the trial court enhanced Simmons' presumptive sentence, but the trial court did not apply the maximum sentence permitted by statute. Now, Simmons disputes the imposition of the sentence by contending that his sentence was inappropriate given the nature of the offense and the character of the offender.

When reviewing whether a defendant was properly sentenced, we consider whether the sentence is appropriate considering the "nature of the offense" and the "character of the offender." *See* App. R. 7(B). In the instant case, the trial court found that Simmons committed a senseless and disturbing criminal act that resulted in physical and mental anguish and pain to Officer Davidson and Officer Warner. Particularly, the record reveals that Simmons used a metal flashlight, a computer printer, a glass coffee pot, a five-gallon water bottle, his fists and feet to "subdue" the officers. (Appellant's App. p. 327). As a result, Officer Davidson can no longer see from her left eye, she has permanent loss in her sense of taste and smell, has facial numbness, ringing in her ears, and a loss of strength and mobility in her hand. The record shows that Simmons failed to intervene to stop the unnecessary beating of Officer Davidson, as she lied motionless on the floor while LeMasters continued to kick her. The record further discloses that Officer Warner, who was already being held down by Woolen, pleaded with Simmons by offering to give him what he wanted by opening the doors to allow Simmons and the other escapee inmates to escape; however, Simmons continued to threaten to kill Officer Warner if he got up. Based upon the above, it is our determination that the trial court properly considered the nature of the offense when enhancing Simmons' sentence. *See* App. 7(B).

In addition to reviewing the traditional balancing of aggravating and mitigating circumstances, we review the sentence to assure that it is constitutionally proportionate to the "character of the offender." *Borton v. State*, 759 N.E.2d 641, 648 (In.Ct.App.2001). This court is

mindful of the principle that "the maximum sentence enhancement permitted by law should be reserved for the very worst offenses and offenders." *Id.* The record reflects that the trial court noted Simmons' prior criminal history. In particular, at the sentencing hearing, the trial court stated the following:

> Another aggravating factor set out by statute is the language that a person has a history of criminal or delinquent activity. In [ ] Simmons' case there are a number of points set out on pages 12 and 13 of the presentence report. One of them refers back to the history of delinquent—delinquency referrals, and more specifically that [ ] Simmons over a course of 20 months had 10 juvenile referrals; so that that aggravating factor certainly applies to this case. Some of them were status offenses such as runaway, but others were for offenses that would be for crimes if committed by an adult.

(Tr. p. 761). Thus, we find that Simmons does fall into this category. The record further reveals that Simmons negatively responded to alternative means other than incarceration. Particularly, the trial court noted:

> In [ ] Simmons' case I think it's important to note that not only did his family go through considerable best efforts to try to correct his behavior, but that he was also given the opportunity for probation, for substance abuse counseling, attempts of house arrest, and attempts to send him to AA or NA meetings; all of those obviously were unsuccessful and we find ourselves here today.

(Tr. p. 761). Based upon all of the above, the record clearly evidences that the trial court considered Simmons' character when sentencing him. Therefore, we find that the sentence imposed by the trial court was appropriate, given the nature of the offense and the character of the offender.

*See* App. R. 7(B); *see also Rodriguez,* 785 N.E.2d at 1174.

Nonetheless, Simmons argues that the trial court abused its discretion in sentencing him because the other escapee inmates received a less harsh sentence than him. In particular, Menke was sentenced pursuant to his plea agreement and received a thirty-five years executed sentence at the DOC; Woolen, who was also sentenced pursuant to his plea agreement, was sentenced to sixty-years executed at the DOC; and pursuant to his plea agreement, LeMasters was sentenced to seventy years executed at the DOC. Simmons maintains that the trial court should have been more uniform than sentencing him to twenty-four more years than LeMasters and thirty-four more years than Woolen.

We have previously stated that although a guilty plea is not automatically a significant mitigating factor, where the State reaps a substantial benefit from the defendant's plea, the plea saves the court time and the victim is spared the trauma of a trial, the defendant should have a substantial benefit returned. *Farmer v. State,* 772 N.E.2d 1025, 1027 (Ind.Ct.App. 2002). Such is the case here. The record reveals that LeMasters, Woolen, and Menke pled guilty for their participation in the crime and entered into a plea agreement with the State. In return, the State requested the sentence that was imposed by the trial court. Therefore, because of their cooperation with the State, LeMasters, Woolen, and Menke all received a substantial benefit. *See id.* On the contrary, Simmons is not entitled to such a benefit because he did not enter into an agreement with the State. Therefore, we find that the trial court did not abuse its discretion in sentencing Simmons to a different sentence than the other escapee inmates. *See Powell,* 751 N.E.2d at 314.

Consequently, we find that the sentence imposed by the trial court was appropri-

ate, given the nature of the offense and character of the offender. *See* App. R. 7(B). Accordingly, after due consideration of the trial court's decision, we conclude that Simmons' sentence was appropriate in light of the nature of the offense and the character of the offender. *See* App. R. 7(B); *See Rodriguez*, 785 N.E.2d at 1174.

### CONCLUSION

Based upon the foregoing, we conclude that the trial court properly evaluated Simmons' aggravating and mitigating circumstances and, therefore, the enhanced sentence was appropriate. Additionally, we hold that the sentence was appropriate in light of the nature of the offense and the character of the offender.

Affirmed.

VAIDIK, J., and CRONE, J., concur.