**Jerry REYES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0406–CR–351.**

Court of Appeals of Indiana.

June 2, 2005.

Rehearing Denied Aug. 15, 2005.

Robert W. Hammerle, Hammerle & Allen, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Jerry Reyes ("Reyes") pled guilty to Class B felony voluntary manslaughter in Marion Superior Court. Reyes appeals, raising the following restated issues for review:

I. Whether Reyes' sentence implicates *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004);

II. Whether the trial court abused its discretion when it found Reyes' sentencing aggravators and mitigators; and,

III. Whether Reyes' sentence is appropriate.

Concluding that Reyes' sentence does not implicate *Blakely*, the trial court did not abuse its discretion, and Reyes' sentence is appropriate, we affirm.

## Facts and Procedural History

On July 11, 2002, the police discovered the body of Ted Martin ("Martin") in his home. On July 15, 2002, the State charged Reyes with Martin's murder. On May 5, 2004, Reyes pled guilty to Class B felony voluntary manslaughter and the State dismissed its murder allegation. Reyes' plea provided that Reyes would receive a sentence between ten and twenty years to be determined by the trial court.

Upon sentencing Reyes, the trial court found Reyes' absence of criminal history, Reyes' remorse, and its conclusion that Reyes was involved in something "beyond his capabilities" as sentencing mitigators. However, the trial court found that Reyes confronted Martin in his home, Reyes was in a position of trust, and the nature of the crime to be sentencing aggravators. Based on its findings, the trial court sentenced Reyes to twenty years executed in the Department of Correction. Reyes now appeals.

### I. *Blakely*

On June 24, 2004, the Supreme Court handed down *Blakely*, which held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 124 S.Ct. at 2536. *Blakely* applies to Indiana's sentencing scheme. *Smylie v. State*, 823 N.E.2d 679, 684–85 (Ind.2005).

Reyes contends the factors used to aggravate his sentence were required to be submitted to a jury under *Blakely*. However, a "fact admitted by the defendant does not run afoul of the *Blakely /Apprendi* constitutional requirements." *Teeters v. State*, 817 N.E.2d 275, 279 (Ind. Ct.App.2004) (citing *Blakely*, 124 S.Ct. at 2537). "When a defendant pleads guilty,

the State is free to seek judicial sentence enhancements so long as the defendant ... stipulated to the relevant facts." *Blakely*, 124 S.Ct. at 2541.

■ The trial court's first aggravating factor was its finding that Reyes confronted Martin in his home. Tr. p. 76. The factual basis [1] indicated Martin was in his home when Reyes killed him and Reyes went to Martin's home to "settle a dispute" or "reason with him." Tr. pp. 11, 13. This admission is sufficient to conclude Martin was confronted in his home.

The trial court's second aggravating factor was its finding that Reyes was in a position of trust with Martin. Tr. p. 76. Reyes admitted at his sentencing hearing and in his Appellant's Brief that he and Martin were friends. Tr. p. 61; Br. of Appellant at 9. Reyes is correct in asserting that an admission of friendship does not in and of itself create a position of trust for sentencing purposes and supports this assertion with the contention that he and Martin's friendship was only based upon male strippers and the use of illegal drugs. However, Reyes' admission indicates that there was enough of a position of trust in his friendship with Martin for Martin to invite Reyes into his home. Tr. p. 13. Reyes abused that trust by using their friendship to gain access to Martin's home in order to inject, strangle, bite, and bludgeon Martin to death.

■ Moreover, even if the trial court's aggravating factor was error, it was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 22–23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (reversal is not mandatory if an error that affects a defendant's federal constitutional rights is harmless beyond a reasonable

doubt). Clearly, the trial court's chief aggravating factor was the circumstances of Reyes' crime. Martin was strangled, bludgeoned, bitten, and injected over an "incredibly long period of time." Tr. pp. 10–11, 14. Reyes is a medical doctor and arrived at Martin's home with a lethal dosage of doxepin. Tr. pp. 10–11. This "circumstance" strongly suggests premeditation on the part of Reyes and would have supported a conviction *much* higher than a Class B felony with a twenty-year sentence.

■ Finally, the trial court considered the circumstances of the crime as an aggravating factor. Tr. p. 76. Reyes admitted to the facts in the State's charging information, and the State's charging information indicated that Martin died from strangulation and blunt-force trauma wounds. Appellant's App. pp. 30, 200; Tr. p. 7. Reyes also admitted, "I remember striking [Martin] and fighting with him for what seemed an incredibly long time. I remember using a syringe." Tr. p. 14.

Reyes also admitted:

An autopsy was performed on the body of Ted Martin ... I'd summarize the anatomic findings as multiple lacerations, contusions and abrasions of the head, forehead, nose, cheeks, and top of the head; abrasions over the neck, in the doctor's opinion manual strangulation injuries over the neck; multiple puncture wounds of the upper extremities—the shoulders, the right elbow, the left elbow; a needle puncture of his right arm, and also on the left arm, an abrasion of the right wrist and a contusion, possibly a bite wound on one of his fingers. There were multiple abrasions of his chest, abdomen and back. And

---

1. At Reyes' sentencing hearing, the State gave a detailed summarization of the evidence supporting Reyes' conviction, and Reyes admit-

ted the State's summarization, without exception. Tr. pp. 8–16.

Dr. Pless later found through a toxicology screen that Ted Martin had a drug called doxepin in his system, in the amount of 12,630 nanograms per milliliter, and the doctor noted that the lethal amount of that particular drug would be over 10,000 nanograms.

Tr. pp. 10–11. Reyes' admissions moot any *Blakely* considerations regarding the aggravating factors used by the trial court.

## II. Abuse of Discretion

 Reyes claims the trial court erred when it balanced his aggravating and mitigating sentencing factors to aggravate his sentence. Sentencing decisions are within the trial court's discretion and will be reversed only for an abuse of discretion. *Matshazi v. State,* 804 N.E.2d 1232, 1237 (Ind.Ct.App.2004). The trial court must determine which aggravating and mitigating circumstances to consider when increasing or reducing a sentence and is responsible for determining the weight to accord these circumstances. *Id.*

### A. *Aggravators*

Reyes first contends the trial court's aggravating factor that he confronted Martin in his own home was improper because Reyes did not go to Martin's home to confront him. Br. of Appellant at 9. However, Reyes admits that he went to Martin's home to "settle a dispute" or "reason with him." Tr. pp. 11, 13. This admission supports the trial court's finding. Furthermore, we agree with the trial court's conclusion that the fact that Martin was bludgeoned, strangled, and poisoned in the sanctity of his home is a circumstance that elevates the depravity of Reyes' crime.

Reyes also contends the trial court's aggravating factor that Reyes abused his position of trust was improper because Martin and Reyes' friendship was based upon the use of illegal drugs and there was not a lot of trust in the friendship. Br. of Appellant at 9 (citing *Edgecomb v. State,* 673 N.E.2d 1185 (Ind.1996)).

However:

Edgecomb was not in a "position of trust" with Motylewski as that term is used in these previous cases. Edgecomb was merely a neighbor who occasionally borrowed things from Motylewski[ ] and casually conversed with her when they would see each other. Being a "neighbor" may encompass a higher degree of societal relationship and philial responsibility than that of "stranger" or "acquaintance," but such a relationship, without more, is not a "position of trust" warranting its consideration as an aggravating circumstance. Indeed, Motylewski did not "trust" Edgecomb at all.

673 N.E.2d at 1198.

The facts at bar are easily distinguishable from *Edgecomb.* Reyes admits to being Martin's friend and was more than a person who "occasionally borrowed things" or "casually conversed" with Martin. More importantly, Reyes used his relationship with Martin to gain access to Martin's home.

Finally, Reyes contends the trial court improperly relied upon the circumstances of Martin's death to aggravate his sentence because death is an element of voluntary manslaughter and an element of the offense may not be used to aggravate a sentence. Br. of Appellant at 10. However, the "circumstances" of Reyes' crime go well beyond the mere element of killing. The "circumstances" that the trial court was referring to were as the fact that Reyes bludgeoned, strangled, and poisoned Martin over—in Reyes' own words—what "seemed like an incredibly long time." Tr. p. 14.

## B. *Mitigators*

 "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Firestone v. State,* 774 N.E.2d 109, 114 (Ind.Ct.App.2002). A trial court is not required to include within the record a statement that it considered all proffered mitigating circumstances. *Id.*

 Although Reyes notes that the trial court did not consider three of his proffered mitigating circumstances, he only challenges the trial court's failure to consider his guilty plea as a mitigating circumstance. Br. of Appellant at 7–9. Because Reyes was charged with murder and unquestionably killed Martin, Reyes' Class B felony plea agreement is best described as a pragmatic decision, rather than an acceptance of responsibility. Reyes attempts to counter this argument by asserting the State's witnesses were questionable individuals, the circumstances surrounding Martin's death were unclear, and the State would have had difficulty proving him guilty of murder. Br. of Appellant at 3–4. Even assuming that Reyes' characterization of the credibility of witness accounts is accurate, Reyes admitted killing Martin and Reyes' account of Martin's death and Reyes' character—as indicated by his drug use and interaction with individuals whom he himself characterizes as untrustworthy make the pragmatism, rather than any alleged mitigating quality, of his agreement clear.

In this regard, Reyes claims he went to Martin's house to reason with him and, if he could not reason with him, he and his friend, Jacoba Ballard, would sedate him with the drug doxepin, take [him] back to Reyes' home where they would stage

a break-in, and they would call the police and have Martin ... arrested for breaking in.

Tr. p. 13. Reyes then claimed,

Ballard, Ted Martin, and [I] smoked a few cigarettes and then Jacoba said she wanted to go to the bathroom. [I]nstead of using the one down there, she started going up the stairs. Ted started to follow her, telling her where it was, and he suddenly had a look in his face of shock. That's when he turned back toward me and came at me. I don't know why .... I can only speculate that he either saw the gun or the syringe that had been in Jacoba's purse. I remember striking him and fighting with him for what seemed an incredibly long time. I remember using the syringe which Jacoba must have given to me sometime when we were downstairs.

Tr. pp. 13–14.

It does not immediately follow why Martin would lunge at Reyes because of the contents of Jacoba's purse. One also wonders why Reyes came to Martin's house with a lethal dosage of doxepin if it was not his intention to kill Martin.[2]

In light of the fact that Reyes admitted to killing Martin and his account of Martin's death, the dearth of explanations concerning the exact manner of Martin's death is not a fact that would make Reyes' acquittal more likely. Under these facts and circumstances, Reyes' plea appears to have been purely a pragmatic decision, and the trial court was within its discretion when it declined to consider it as a mitigating factor.

## III. The Inappropriate Standard

 Lastly, Reyes asserts his twenty-year sentence is inappropriate. Appellate courts have the constitutional authority to

**2.** Reyes has a medical degree and practiced medicine.

revise a sentence if, after consideration of the trial court's decision, the court concludes the sentence is inappropriate in light of the nature of the offense and character of the offender. Ind. Appellate Rule 7(B); *see also Asher v. State,* 790 N.E.2d 567, 570 (Ind.Ct.App.2003).

The State claims Reyes has forfeited his claim to the inappropriate sentencing standard by agreeing to a plea that specifically called for a sentence between ten and twenty years. Br. of Appellee at 20 (citing *Bennett v. State,* 813 N.E.2d 335, 338 (Ind. Ct.App.2004)). Recently, this court disapproved of *Bennett* as applied to open plea agreements because when a defendant agrees to an open plea, the defendant concedes to nothing more than the commission of the crime. *See Mast v. State,* 824 N.E.2d 429 (Ind.Ct.App.2005); *see also* Joel Schumm, *More Garbage Searches, Sentence Review and Other Holdings,* Vol. 38, No. 3 Res Gestae 35, 35 (2004).

However, Reyes' plea was not open; rather, it specifically called for a sentence within the range of ten to twenty years. Appellant's App. p. 203. We believe when a defendant's plea provides for a specific sentencing range, implicit in the defendant's agreement is his concession that a sentence within that range is appropriate. *See Gist v. State,* 804 N.E.2d 1204, 1207 (Ind.Ct.App.2004); *Mann v. State,* 742 N.E.2d 1025, 1026 n. 1 (Ind.Ct.App. 2001), *trans. denied.*

We acknowledge a defendant's constitutional right to appeal his or her sentence and the problems with "implicitly" waiving such a right. *See Tumulty v. State,* 666 N.E.2d 394, 396 (Ind.1996) (defendants are "entitled to contest the merits of a trial court's sentencing discretion where the court has exercised sentencing discretion"). However, the precedent relied upon for our holding does not deny a defendant the opportunity to appeal his or

her sentence; such a defendant is merely precluded from challenging his or her sentence as inappropriate under Appellate Rule 7(B). *Gist* and *Mann* do not preclude a defendant, nor should a defendant be precluded, from appealing the trial court's exercise of its discretion in the finding and balancing of aggravators and mitigators as an abuse of discretion. *See Leone v. State,* 797 N.E.2d 743, 748–49 (Ind.2003) (reviewing the trial court's balancing of aggravators and mitigators for an abuse of discretion).

Since Reyes' plea called for a sentence ranging between ten and twenty years, he implicitly conceded that a sentence within that range is appropriate and that he was subjecting himself to the maximum sentence for a Class B felony in exchange for the State's dismissal of his murder allegation. Moreover, even if Reyes were entitled to inappropriate sentencing review, the unusually gruesome nature of Martin's death renders Reyes' sentence appropriate.

### Conclusion

Reyes' sentence does not implicate *Blakely,* the trial court did not abuse its discretion, in its consideration of aggravating and mitigating factors, and Reyes' sentence is appropriate.

Affirmed.

BAILEY, J., concurs.

MAY, J., concurs in result with opinion.

MAY, Judge, concurring in result.

I disagree that Reyes was in a position of trust with Martin. As the majority correctly notes, Reyes' admission he and Martin were friends is insufficient, without more, to prove Reyes occupied a position of trust. However, I disagree with the majority's apparent conclusion that friends are in a position of trust vis-à-vis each

other just because one friend is willing to invite the other into his home. *See Trusley v. State,* 818 N.E.2d 110, 113 (Ind.Ct. App.2004) (defendant's admission she was a day care provider did not, without more, substitute for a jury's determination she was in a position of trust with respect to the victim to such an extent that a sentence enhancement was warranted).

Nevertheless, I agree the trial court's consideration of this aggravating factor was harmless beyond a reasonable doubt given Reyes' admissions regarding the circumstances of the crime. Accordingly, I concur in the result.